536 A.2d 646

ATTORNEY GRIEVANCE COMMISSION OF MARYLAND

v.

Roger Milton GREGORY, Jr.

Misc. (Subtitle BV) No. 14, Sept. Term, 1986.

Court of Appeals of Maryland.

Feb. 8, 1988.

Melvin Hirshman, Bar Counsel and Glenn M. Grossman, Asst. Bar Counsel for the Attorney Grievance Com'n of Maryland, for petitioner.

Roger Milton Gregory, Jr., Washington, D.C., for respondent.

Argued before MURPHY, C.J., and COLE, RODOWSKY, McAULIFFE, ADKINS, and BLACKWELL, JJ.

McAULIFFE, Judge.

The Attorney Grievance Commission alleges that Roger Milton Gregory, Jr., during 1984 and 1985, engaged in improper solicitation of defendants in criminal cases by in-person solicitation and by targeted mailings.[1] Respondent admits that he made a practice of initiating personal contacts with criminal defendants outside courtrooms where those defendants had just been advised of their right to

---

1. As used in this opinion, targeted mailing refers to written communications by a lawyer or his agent directed to specific persons known to need legal services of the kind provided by the lawyer.

counsel, and of then introducing himself as an attorney, handing the defendants a letter soliciting their business, and suggesting that they call him. He further admits to sending targeted mail solicitations to other persons in apparent need of counsel, whose identities he had learned by observing advice-of-rights proceedings in the courtroom. He contends, however, that his solicitations were absolutely protected by the Freedom of Speech Clause of the First Amendment to the United States Constitution.

Respondent is sixty-one years of age, resides in Silver Spring, Maryland, and maintains an office for the practice of law in the District of Columbia. Following his graduation from the United States Naval Academy, he pursued a career which included military service as a naval aviator and civilian service as an intelligence analyst with the Office of Naval Intelligence. He then attended law school, graduating from George Washington University Law School in 1969 with honors. He was admitted to the bar of this State on July 1, 1969, and is also a member of the bar of the District of Columbia.

Respondent testified that in an attempt to build his Maryland criminal practice, he attended proceedings held in the District Court of Maryland sitting in Montgomery County, where he wrote down the names of criminal defendants who were advised of their rights in accordance with Maryland Rule 4–215(a).[2] Armed with this information, Respondent

---

2. Rule 4–215(a) required the Court, at a defendant's first appearance without counsel, to:

(1) Make certain that the defendant has received a copy of the charging document containing notice as to the right to counsel.

(2) Inform the defendant of the right to counsel and of the importance of assistance of counsel.

(3) Advise the defendant of the nature of the charges in the charging document, and the allowable penalties, including mandatory or minimum penalties, if any.

(4) Conduct a waiver inquiry pursuant to section (b) of this Rule if the defendant indicates a desire to waive counsel.

\*　　\*　　\*　　\*　　\*　　\*

(6) When in the District Court, if a postponement is granted to obtain counsel, advise the defendant that if the defendant appears

would follow one of two approaches. Either he would obtain addresses of the defendants from other public records and write to each of them, or he would follow the defendants as they left the courtroom and confront them as they were leaving the building. When following the targeted mail solicitation approach, Respondent would send the following form letter on his professional stationery:

Want good service at low prices? Read On!

Also offering free initial consultation.

I am a fully accredited attorney regularly handling drunk driving and other traffic matters as well as criminal matters in Maryland and the District of Columbia and have been doing so for 15 years.

I was admitted to the Maryland and D.C. bars in 1969.

I have never had a client complaint filed against me in a traffic or criminal matter.

I believe that it is possible to deliver quality service at reasonable prices and I take pride and pleasure in doing so.

I will handle your case (criminal or traffic) for a very reasonable flat fee. Please do me and yourself a favor by consulting with me or calling for a fee quotation prior to making final arrangements (i.e. paying a retainer) to any other attorney.

Thank you for giving this your attention.

Sincerely,

/s/Roger M. Gregory, Jr.

Respondent's in-person approach was to follow a defendant from the courtroom, speak to him, and hand him a copy of the form letter. According to a witness who observed this practice on two occasions, the conversation between Re-

---

for trial without counsel, the court could determine that the defendant waived counsel and proceed to trial with the defendant unrepresented by counsel.

From time to time the District Court would give notice to a number of unrepresented criminal defendants, requiring them to appear for the purpose of insuring compliance with the rule in advance of the trial date, and it was these hearings that Respondent would attend.

spondent and a defendant lasted from one to two minutes. According to Respondent, his ordinary conversation consisted of the following:

> Here's a letter about my services. If you're interested call me.... Something came up about—and I reviewed the Ethics Committee findings that you can give out brochures and I found that on a couple of occasions I might have been a little bit beyond—nothing should you say to them that even could be construed—and the few occasions people pressed me for my fees and I'd give them an idea of what the fee might be. Since then, when a person asks me that, I tell them Maryland is very strict on what can go on and I cannot discuss it and I'm not trying to be evasive but I can't discuss it. If you're interested call me and I'll discuss everything with you, talking about fees and so forth.

Respondent testified that prior to 1983, when he was reprimanded by the Attorney Grievance Commission for in-person solicitation, his practice was to engage the defendants in more extensive conversation. As to those earlier occasions,[3] he said:

> When I was talking to them in the courthouse, I was getting information on their case, maybe give them an opinion as to—you know—how to—how it might come out, going over the—making sure they understood the penalties, quoting fees, if they were interested, asking for a retainer. None of those things are in this letter. But they both are designed—they were both designed for the same purpose, yeah.

---

**3.** The trial judge to whom the instant case was referred for hearing understood this portion of the testimony to relate to Respondent's practices in 1984–85. Respondent insists he was referring to his pre–1983 practice, and bar counsel candidly admits that this may have been the case. Respondent's testimony was far from clear on this point, but when his answer is considered in the context of his entire testimony, we think it likely he was referring to earlier conduct, and we accept that as a fact.

Respondent contends that he changed his practice as a result both of the 1983 reprimand, and of having been made aware of a 1981 Maryland State Bar Association Ethics Committee opinion which dealt in part with in-person solicitation. For purposes of this case, we accept Respondent's version of what ordinarily occurred when he spoke with defendants following their exit from the courtroom.

The hearing judge found that by reason of the in-person solicitation and the targeted mailings Respondent violated DR 1–102(A)(2) (a lawyer shall not violate a disciplinary rule), DR 2–103(B) & (F) (a lawyer shall not recommend employment of himself to one who has not sought his advice, nor accept employment following such recommendation), and DR 2–104(A) (a lawyer shall not, except under specified conditions, accept employment resulting from unsolicited advice to a layman to obtain counsel).

Upon our independent review of the facts not contested by Respondent, we find by clear and convincing evidence that Respondent has violated DR 2–103(B) & (F) by his impermissible in-person solicitation of, and subsequent acceptance of employment from, persons who have not sought his advice regarding employment of a lawyer. We do not find it necessary or desirable to consider the question of whether Respondent's targeted mailings constituted an additional violation of the disciplinary rules, principally because we are satisfied that the determination of that question would not affect the sanction that should be imposed in this case.[4]

---

**4.** As a practical matter, if not technically, under the circumstances of this case the more egregious form of solicitation tends to subsume, at least for the purpose of determining an appropriate sanction, the less egregious solicitation by mail, even if the latter should be found to constitute a violation of the disciplinary rules as they existed at that time. Moreover, our determination of this issue would have little or no prospective importance, due to the significant change in the rules effected by the adoption of The Maryland Lawyers' Rules of Professional Conduct, effective January 1, 1987. See Rule 7.3.

■ Respondent's in-person solicitation of clients in the corridors of the District Court, and his admitted acceptance of employment by many of those solicited, contravened the plain language of DR 2–103(B) & (F). Our inquiry cannot end there, however, for it is clear that a general prohibition against solicitation must be tested against the individual facts of each case to determine whether the application of that prohibition would offend constitutional guarantees of free speech and the right of association. *Zauderer v. Office of Disciplinary Counsel,* 471 U.S. 626, 105 S.Ct. 2265, 85 L.Ed.2d 652 (1985); *In re R.M.J.,* 455 U.S. 191, 102 S.Ct. 929, 71 L.Ed.2d 64 (1982); *Ohralik v. Ohio State Bar Assn.,* 436 U.S. 447, 98 S.Ct. 1912, 56 L.Ed.2d 444 (1978); *In re Primus,* 436 U.S. 412, 98 S.Ct. 1893, 56 L.Ed.2d 417 (1978); *Bates v. State Bar of Arizona,* 433 U.S. 350, 97 S.Ct. 2691, 53 L.Ed.2d 810 (1977); *NAACP v. Button,* 371 U.S. 415, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963).

■ Respondent points out that his conduct involved a component of speech, and provided information to potential consumers. Additionally, he says that his written and verbal communications were not misleading, and that his speech and demeanor involved neither fraud, undue influence, intimidation, overreaching, nor any other vexatious conduct. He contends that a disciplinary rule involving conduct imbued with First Amendment protections must be interpreted so narrowly that only conduct which is actually misleading, fraudulent, intimidating, or the like, may be censured. In this he is wrong, for in a proper case, where the possibility of such conduct is sufficiently high and the reasonable possibility of detection or deterrence through alternative means is sufficiently low, the State may impose a reasonable regulation, and sanction the disobedience of that regulation, even where it is clear that the particular violation did not result in the mischief the regulation was created to prevent. The words of the Supreme Court in *Ohralik* are particularly apposite:

[A]ppellant errs in assuming that the constitutional validity of the judgment below depends on proof that his

conduct constituted actual overreaching or inflicted some specific injury.... His assumption flows from the premise that nothing less than actual proved harm to the solicited individual would be a sufficiently important state interest to justify disciplining the attorney who solicits employment in person for pecuniary gain.

Appellant's argument misconceives the nature of the State's interest. The Rules prohibiting solicitation are prophylactic measures whose objective is the prevention of harm before it occurs. The Rules were applied in this case to discipline a lawyer for soliciting employment for pecuniary gain under circumstances likely to result in the adverse consequences the State seeks to avert. In such a situation, which is inherently conducive to overreaching and other forms of misconduct, the State has a strong interest in adopting and enforcing rules of conduct designed to protect the public from harmful solicitation by lawyers whom it has licensed.

*Ohralik v. Ohio State Bar Assn., supra,* 436 U.S. at 464, 98 S.Ct. at 1922–23.

The Court went on to say that it was "not unreasonable for the State to presume that in-person solicitation by lawyers more often than not will be injurious to the person solicited," and that because in-person solicitation is not open to public scrutiny and is nearly impossible to police, "it ... is not unreasonable, or violative of the Constitution, for a State to respond with what in effect is a prophylactic rule." 436 U.S. at 466–67, 98 S.Ct. at 1923–24.

■ *In re Primus* and *NAACP v. Button,* both *supra,* teach us that we must also examine the motivation that prompted the solicitation, because an otherwise prohibited in-person solicitation may be protected when it is but part of a goal of transcendent importance, such as the expression of political statements. In the case before us, no such noble purpose was advanced. This was in-person solicitation for pecuniary gain. Respondent's conduct fell within the prohibition of a valid prophylactic rule, and is subject to no constitutionally mandated exception.

Respondent next contends that even if he violated the disciplinary rule prohibiting solicitation, he should be excused because he acted in reliance upon a formal opinion of the Committee on Ethics of the Maryland State Bar Association. The opinion to which he refers is No. 81–21, dated February 16, 1981. That opinion was issued in response to an attorney's request for guidelines concerning the ethical distribution of written material advertising legal services, including prepaid legal services plans. In addition to his request for guidance in the area of direct-mail advertising, the attorney asked whether it would be permissible for an attorney from his office to randomly hand out prepaid legal services brochures to employees at the exit gate of a business. The Ethics Committee opined that the proposed random distribution would be permissible if the attorney confined himself to the mechanical process of handing out brochures, and refused to respond to any request for further information except by telling any persons who made inquiry that they could call or write for further information.

Respondent testified that Opinion 81–21 was brought to his attention by a representative of the Attorney Grievance Commission during his 1983 grievance proceeding. He said that in reliance upon the opinion and because of the reprimand that he received for more aggressive in-person solicitation, he modified his approach and thereafter believed he was acting ethically. Opinion 81–21 has been superseded,[5] and we see no need to consider whether it was accurate when written in the light of the precise circumstances of the inquiry that was before the Ethics Committee. We point out that an opinion of the Ethics Committee of the Bar Association is advisory, and is not binding on this Court.[6] As a practical matter, however,

---

**5.** Opinion 87–2, dated June, 1987, and interpreting Rules 7.2 and 7.3 of the Maryland Rules of Professional Conduct, states that Opinion 81–21 "is no longer accurate" as it relates to in-person solicitation.

**6.** This general principle may be modified by rule or statute. *See, e.g., In re Foster,* 271 Md. 449, 472, 318 A.2d 523 (1974) (pointing out that

**532**

where an attorney can demonstrate reasonable reliance upon an ethics opinion on point, that fact is likely to have a significant effect on the initial decision of the Attorney Grievance Commission concerning the filing of a complaint, as well as upon the determination or disposition of those charges that may be filed. Respondent's argument, however, lacks persuasive force for two reasons. First, he was not relying upon an opinion that dealt with the circumstances of his solicitation. Without intimating that the conclusion reached in Opinion 81–21 was correct, we point out that the in-person contact contemplated there was the distribution of prepaid legal services brochures at random to persons having no known specific need for legal services at the time of contact. Respondent, on the other hand, accosted persons known by him to have been charged with an incarcerable criminal offense, who were without counsel, and who had just been advised by a judge concerning the maximum possible penalties upon conviction and the important assistance an attorney could provide. The vulnerability of persons in that situation should have been, and indeed was, obvious to the Respondent. It is just that type of situation, fraught as it is with the potential for overreaching or other improper conduct, which is appropriate for a prophylactic rule prohibiting in-person solicitation of any kind. Second, Respondent should have been guided by our opinion in *Attorney Griev. Comm'n v. Weiss*, 300 Md. 306, 477 A.2d 1190 (1984), in which we found an attorney to have violated DR 2–103(B) by in-person solicitation of criminal defendants in the corridors of the same District Court building in Montgomery County.

Finally, Respondent argues that he should not be found to have violated DR 2–104, because he did not advise

the Maryland Rule creating a Judicial Ethics Committee (now Rule 1231, Canon 7 of the Maryland Code of Judicial Conduct) provides protection to a judge who complies with an opinion obtained from the Judicial Ethics Committee); *State v. Nipps,* 66 Ohio App.2d 17, 419 N.E.2d 1128, 1133 (1979) (statute grants protection to state official or employee acting in reliance upon opinion obtained from Ohio Ethics Commission).

anyone to obtain counsel. Rather, he says, he solicited the defendants to engage him after the judge had advised them to retain counsel. We agree. *Attorney Griev. Comm'n v. Weiss, supra,* 300 Md. at 312, 477 A.2d 1190.

■ We conclude that Respondent has violated DR 2–103(B) & (F) by his in-person solicitation and by his accept-ance of employment resulting from such solicitation,[7] and we turn to the question of the appropriate sanction to be imposed. What we said in *Weiss* bears repeating here:

> We note that with the growth of legal advertising there may be those who look on solicitation as nothing more than advertising in person. We stress that this is not the case. Solicitation involves individual contact that is quite different from the abstract and impersonal nature of television, radio, newspaper advertisements or other forms of advertisement and is clearly prohibited by the disciplinary rules governing the conduct of those admit-ted to the Bar of this State.

> *Attorney Griev. Comm'n v. Weiss, supra,* 300 Md. at 314, 477 A.2d 1190.

In *Weiss,* we issued a reprimand. We added, however, that "a persistent or more egregious course of conduct in viola-tion of our disciplinary rules may lead to much more severe sanctions." *Id.* Respondent should have been deterred by his earlier reprimand, and by our message in *Weiss.* A more severe sanction is now warranted, and accordingly, we direct that Roger Milton Gregory, Jr. be suspended from the practice of law in this State for a period of 90 days beginning 30 days after the filing of this opinion. He shall stand suspended beyond that date unless and until all costs incurred in connection with this proceeding are paid in full.

---

**7.** The hearing judge also found a violation of DR 1–102, but because that finding was based solely upon subsection (A)(1) providing that a lawyer shall not violate a disciplinary rule, we believe a separate finding of a violation of DR 1–102 would be duplicitous and is therefore unwarranted.

*IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING THE COSTS OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE BV 15c FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST ROGER MILTON GREGORY, JR.*