In re Roger M. GREGORY,
Jr., Respondent.

No. 88–221.

District of Columbia Court of Appeals.

Argued March 1, 1990.
Decided May 8, 1990.

Joan L. Goldfrank, Executive Atty., for Bd. on Professional Responsibility.

Michael S. Frisch, Asst. Bar Counsel, with whom Thomas E. Flynn, Bar Counsel, was on the brief, for Office of Bar Counsel.

Roger M. Gregory, Jr., pro se.

Before ROGERS, Chief Judge and STEADMAN and FARRELL, Associate Judges.

FARRELL, Associate Judge:

Respondent was suspended, for a period of ninety days, from the practice of law by the Court of Appeals of Maryland upon a finding that he had engaged in in-person solicitation of potential clients in the hallways of the District Court of Maryland in Montgomery County, and so violated Maryland disciplinary rules providing—as summarized by the Court of Appeals—that "a lawyer shall not recommend employment of himself to one who has not sought his advice, nor accept employment following such recommendation." *Attorney Grievance Comm'n v. Gregory*, 311 Md. 522, 528, 536 A.2d 646, 649 (1988), *citing* DR 2–103(B) & (F), Maryland Code of Professional Responsibility. The matter is before us in a reciprocal discipline proceeding. D.C.Bar R. XI, § 11 (1989). The Board on Professional Responsibility (the Board) determined that, in light of material differences between Maryland's disciplinary rule DR 2–103(B) and the corresponding DR 2–103(B) in the District of Columbia, the latter would not provide a basis on which "to proceed *de novo* against Respondent for his misconduct in Maryland," and accordingly was not a basis for the imposition of reciprocal discipline.

At the same time, however, the Board went on to consider this jurisdiction's disciplinary rule DR 2–103(E), which provides in relevant part:

No lawyer ... shall solicit ... any person for purposes of representing him or her in any present or future Superior Court case in the District of Columbia Courthouse, on the sidewalks on the North, South and West sides of the Courthouse, or within 50 feet of the building on the East side.

The Board reasoned: "it is clear that in *substance* Respondent's misconduct in Maryland is also misconduct here, because if Respondent had conducted in the hallways of the Superior Court the identical type of in-person solicitations that he made in the hallways of the District Court in

Maryland, he would have violated DR 2–103(E) of the D.C.Code of Professional Responsibility" (emphasis by Board). Accordingly, the Board concluded that "[t]his case raises the question whether, *in a reciprocal discipline case,* the provisions of D.C.Bar R. XI, § 18(5)(e) [1] should be construed in [a] manner that gives effect to the substance of the prohibitions in DR 2–103(E)" (emphasis by Board). In what we shall treat as a recommendation, the Board declared that this court "would be justified, as the promulgating authority, to interpret D.C. Bar R. XI, §. 18(5)(1) and DR 2–103(E) in a manner that permits the imposition of reciprocal discipline on the record in this case."

For the reasons that follow, we decline to accept the Board's recommendation to construe DR 2–103(E) as "in substance" violated by respondent's conduct. On the other hand, we find that the Board may have overlooked the application of DR 2–103(A)(3) to respondent's behavior, and thus we shall return the matter to the Board for it to consider the application of that rule in light of the discussion in part C, *infra.*

### A.

As found by the Maryland Court of Appeals, at various times in 1984 and 1985, respondent attended criminal proceedings in the District Court of Maryland in Montgomery County. After the presiding judge had advised a criminal defendant of the charges against him, of the maximum possible penalties upon conviction, and of his right to and the importance of counsel,

respondent took one of two paths. One was to mail to the criminal defendant a form letter which in substance solicited the defendant's business. The second, or in-person, approach was described by the Maryland Court of Appeals as follows:

> Respondent's in-person approach was to follow a defendant from the courtroom, speak to him, and hand him a copy of the form letter. According to a witness who observed this practice on two occasions, the conversation between Respondent and a defendant lasted from one to two minutes. According to Respondent, his ordinary conversation consisted of the following:

>> Here's a letter about my services. If you're interested call me.... Something came up about—and I reviewed the Ethics Committee findings that you can give out brochures and I found that on a couple of occasions I might have been a little bit beyond— nothing should you say to them that even could be construed—and the few occasions. people pressed me for my fees and I'd give them an idea of what the fee might be. Since then, when a person asks me that, I tell them Maryland is very strict on what can go on and I cannot discuss it and I'm not trying to be evasive but I can't discuss it. If you're interested call me and I'll discuss everything with you, talking about fees and so forth.[2]

311 Md. at 527, 536 A.2d at 648–49 (footnote omitted). For purposes of the Maryland proceeding, the Court of Appeals "accept[ed] Respondent's version of what ordi-

---

1. Rule XI, § 18(5), which was in effect at the time of the proceedings before the Board, provided that reciprocal discipline should be imposed unless, *inter alia:* "(e) The misconduct elsewhere does not constitute misconduct in the District of Columbia." Effective September 1, 1989, § 18(5)(e) was replaced by an identically worded Rule XI, § 11(c)(5).

2. Respondent testified that prior to 1983, when he was reprimanded by the Attorney Grievance Commission for in-person solicitation, his practice had been to engage the defendants in more extensive conversation. As to those earlier occasions, he said:

   > When I was talking to them in the courthouse, I was getting information on their case,

maybe give them an opinion as to—you know—how to—how it might come out, going over the—making sure they understood the penalties, quoting fees, if they were interested, asking for a retainer. None of those things are in this letter. But they both are de-signed—they were both designed for the same purpose, yeah.

According to the Court of Appeals, respondent maintained that he had changed his practice as a result both of the 1983 reprimand and of having been made aware of a 1981 Ethics Committee opinion which dealt in part with in-person solicitation.

narily occurred when he spoke with defendants following their exit from the courtroom." *Id.* at 528, 536 A.2d at 649.

The Court of Appeals did not decide whether respondent's target mailings constituted a violation of the Maryland Code of Professional Responsibility or were protected by constitutional provisions on free speech. Instead, the Court of Appeals found that respondent, by his in-person solicitations in the courthouse hallways, violated DR 2–103(B) and (F) of the Maryland Code of Professional Responsibility.[3] As noted earlier, these rules broadly prohibit a lawyer either from recommending employment of himself to one who has not sought his advice or from accepting employment following such recommendation. In particular, the court rejected respondent's reliance on the Ethics Committee opinion referred to above,[4] which dealt with the quite different practice of distributing prepaid legal services brochures at random to persons having no known specific need for legal services at the time of contact.

> Respondent, on the other hand, accosted persons known by him to have been charged with an incarcerable criminal offense, who were without counsel, and who had just been advised by a judge concerning the maximum possible penalties upon conviction and the important assistance an attorney could provide. *The vulnerability of persons in that situation should have been, and indeed was, obvious to the Respondent.* It is just that type of situation, fraught as it is with the potential for overreaching or other improper conduct, which is appropriate for a prophylactic rule prohibiting in-person solicitation of any kind.

*Id.* at 532, 536 A.2d at 651 (emphasis added).

**3.** At the time of respondent's conduct in Maryland, lawyers in Maryland were governed by the Code of Professional Responsibility as promulgated in that jurisdiction. By order dated April 15, 1986, the Court of Appeals of Maryland adopted the Maryland Rules of Professional Conduct, effective January 1, 1987.

**4.** Maryland Bar Ass'n Comm. on Ethics, Formal Op. 81–21 (1981).

## B.

■ As the Board recognized, reciprocal discipline must be imposed in this jurisdiction unless, *inter alia*, "the misconduct elsewhere does not constitute misconduct in the District of Columbia." *See* note 1, *supra.* The burden is on the attorney to prove the negative by clear and convincing evidence. *See* present D.C.Bar R. XI, § 11(c). In determining whether respondent had made that showing, the Board first looked to this jurisdiction's version of DR 2–103(B), which provides as follows: [5]

> A lawyer shall not knowingly assist an organization that furnishes or pays for legal services to others to promote the use of his or her services or those of his or her partner, or associate, or any other lawyers affiliated with him or her or his or her firm, as a private practitioner, if:
>
> (1) The promotional activity involves use of a statement or claim that is false, fraudulent, misleading, or deceptive within the meaning of DR 2–101(B) or that violates the regulations contained in DR 2–101(C); or
>
> (2) The promotional activity involves the use of coercion, duress, compulsion, intimidation, threats, unwarranted promises of benefits, overpersuasion, overreaching, or vexatious or harassing conduct.

Although the Board did not address the point, it is apparent that this rule does not apply to respondent's conduct because it pertains to a lawyer who promotes his services to clients through an organization, not directly as respondent did. In any event, the Board found no evidence in the record of the Maryland proceeding that respondent's in-person courthouse solicitations involved fraud, deception, threats, or similar overreaching of the type required to violate this jurisdiction's DR 2–103(B).

**5.** DR 2–103(B) is part of the Code of Professional Responsibility of the District of Columbia. Effective January 1, 1991, the Code will be replaced by the Rules of Professional Conduct adopted by this court by Order of March 1, 1990.

Thus the Board determined, and we agree, that respondent's conduct in violation of Maryland's DR 2–103(B) and (F) did not violate DR 2–103(B) in this jurisdiction, and so reciprocal discipline cannot be imposed on that basis.

■ The Board nevertheless concluded that, although respondent's behavior in Maryland is not misconduct in this jurisdiction "under the literal language of DR 2–103(E)," quoted at page ——, *supra,* "[t]he substance of [r]espondent's misconduct . . . is clearly misconduct here." The Board therefore invited this court to construe DR 2–103(E) "in a manner that permits the imposition of reciprocal discipline on the record in this case."

As the Board acknowledged, however, DR 2–103(E) contains "explicit geographic and court-related limitations." Its prohibitions relate only to solicitations that occur in or very near the District of Columbia Courthouse and involve present or future cases before the Superior Court. It thus contrasts sharply with the Maryland rule under which respondent was disciplined, which, without regard to location or case-relatedness, prohibits any in-person solicitation by a lawyer of a person who has not sought his advice. We conclude that it would be inappropriate to read DR 2–103(E) as reaching solicitation that violates the "substance" of the rule but not its terms. DR 2–103(E) was adopted by this court in 1981. Although the "legislative history" of the rule is sparse, it appears to have been directed to a specific but serious problem of decorum in the District of Columbia Courthouse.[6] To construe the rule as reaching solicitation in any courthouse, anywhere, would rewrite its terms and extend it beyond its likely intended scope. Moreover, as Bar Counsel points out, so broad a reading would raise constitutional concerns of adequate notice to respondent, and expand the sweep of the rule in a way that makes its terms, as written, assailable on vagueness grounds. *See Hirschkop v. Snead,* 594 F.2d 356, 370–71 (4th Cir.1979) (vague disciplinary rule may deny attorney reasonable opportunity to know what is prohibited, and encourage *ad hoc* and subjective application). We conclude that DR 2–103(E) may not properly be read to embrace respondent's conduct of in-person solicitation in courts in the state of Maryland.[7]

## C.

■ There is, however, another aspect of this case which the Board did not address. The Board looked to this jurisdiction's DR 2–103(B) to see if it accorded with Maryland's DR 2–103(B) under which respondent was disciplined. Whether intentionally or inadvertently, the Board appears not to have considered application of this jurisdiction's DR 2–103(A). In general, that rule parallels Rule 2–103(B) in barring only promotional activity involving deceptive or misleading statements or coercion, undue influence, or overreaching. Significantly, however, Rule 2–103(A) contains an additional prohibition:

A lawyer shall not seek by in-person contact, or through an intermediary, his or her employment . . . by a non-lawyer who has not sought his or her advice regarding employment of a lawyer, if:

. . . . .

(3) The potential client is apparently in a physical or mental condition which would make it unlikely that he or she could exercise reasonable, considered judgment as to the selection of a lawyer.

---

6. Comments submitted on the proposed rule cited, for example, Vitez, *Soliciting by Lawyers Turns D.C. Courthouse Lobby Into Marketplace,* The Washington Star, March 9, 1981.

7. The Board's report and counsel representing the Board in this court have both stressed that the proposed interpretation of DR 2–103(E) would apply only in reciprocal discipline proceedings, not in a case where the District of Columbia exercises original jurisdiction to discipline an attorney. With all due respect, we are unable to see a satisfactory distinction. In both cases the net result is that the attorney may be disciplined, even to the extent of having his license to practice law in the District of Columbia suspended. To tolerate less certainty and clarity in the definition of misconduct in reciprocal discipline proceedings than in an original proceeding would be distinctly unfair.

The possible application of this rule to respondent's conduct is evident when we recall the finding of the Maryland Court of Appeals, to which we owe deference, *In re Velasquez*, 507 A.2d 145, 147 (D.C.1976) (per curiam), that respondent solicited a class of persons made especially vulnerable by their situation, and that their "vulnerability ... should have been, and indeed was, obvious" to him. 311 Md. at 532, 536 A.2d at 651. Indeed, there is evidence of record that respondent had been specifically informed of the mental and emotional vulnerability of persons of the kind he solicited. The 1981 Maryland Ethics Committee opinion referred to earlier cautioned, even as to solicitation by mail, that "an attorney may not mail an advertisement to a non-client if he knows or reasonably should know that the physical, emotional, or mental state of the recipient is such that the recipient could not exercise reasonable judgment in employing an attorney." In a June 27, 1985 letter dismissing a solicitation complaint against respondent,[8] counsel for the Attorney Grievance Commission of Maryland called respondent's attention to this language and warned:

> We believe that defendants in criminal and traffic cases are often worried and emotionally overwrought, particularly before, during, and immediately after court appearances. As a result, the court-house environment itself is not an appropriate place for a defendant to make a detached, reasonable decision regarding the employment of an attorney.

As part of a general revision of our rules governing solicitation of professional employment, subsection (3) was adopted shortly after the Supreme Court's decision in *Ohralik v. Ohio State Bar Ass'n*, 436 U.S. 447, 98 S.Ct. 1912, 56 L.Ed.2d 444 (1978). *See* 106 DAILY WASH.L.RPTR. 1265 (July 14, 1978). In that case, the Court rejected a first amendment challenge to Ohio's broad ban on in-person solicitation of clients who have not sought the lawyer's advice. The Court analyzed such prohibitions as "prophylactic measures whose objective is the prevention of harm before it occurs," 436 U.S. at 464, 98 S.Ct. at 1923, identifying two primary justifications. The first is that the situation of persons approached face-to-face "is inherently conducive to overreaching and other forms of misconduct...." The individual "may place his trust in a lawyer ... simply in response to persuasion under circumstances conducive to uninformed acquiescence." While apprising a victim of misfortune of his legal rights may be valuable in the abstract, "the very plight of that person not only makes him more vulnerable to influence but also may make advice all the more intrusive." *Id.* at 464–65, 98 S.Ct. at 1923. Second, "in-person solicitation is not visible or otherwise open to public scrutiny. Often there is no witness other than the lawyer and the lay person whom he has solicited, rendering it difficult or impossible to obtain reliable proof of what actually took place." *Id.* at 466, 98 S.Ct. at 1924. *See also Shapero v. Kentucky Bar Ass'n*, 486 U.S. 466, 475, 108 S.Ct. 1916, 1922, 100 L.Ed.2d 475 (1988).

The source of DR 2–103(A)(3)'s language is the ABA Commission on Evaluation of Professional Standards (Kutak Commission) Proposed Draft Model Rule of Professional Conduct 7.3.[9] Although the draft rule containing this language did not survive in the version of Rule 7.3 adopted by the ABA, its spirit is reflected in the official comment accompanying the final rule, which echoes the concerns of the Supreme Court in *Ohralik:*

> There is a potential for abuse inherent in direct solicitation by a lawyer of prospective clients known to need legal services. It subjects the lay person to the private

---

**8.** The letter is appended to respondent's brief in this court.

**9.** The draft rule provided:
   (b) A lawyer shall not contact, or send a written communication to, a prospective client for the purpose of obtaining professional employment if:

   (1) the lawyer knows or reasonably should know that the physical, emotional or mental state of the person is such that the person could not exercise reasonable judgment in employing a lawyer....

importuning of a trained advocate, in a direct interpersonal encounter. *A prospective client often feels overwhelmed by the situation giving rise to the need for legal services, and may have an impaired capacity for reason, judgment and protective self-interest....* The situation is therefore fraught with the possibility of undue influence, intimidation, and over-reaching.

MODEL RULES OF PROFESSIONAL CONDUCT Rule 7.3, comment (1983) (emphasis added). The comment accompanying this jurisdiction's recently-adopted Rule 7.1, *see* note 5, *supra,* also acknowledges that, although soliciting clients through mass media and through in-person contact are generally similar, "[i]n person solicitation can ... create additional problems because of the particular circumstances in which the solicitation takes place." [10]

Thus, by adopting a rule which prohibits in-person contact seeking retention by a non-lawyer "apparently in a physical or mental condition which would make it unlikely that he or she could exercise reasonable, considered judgment as to the selection of a lawyer," we have followed the prophylactic approach upheld in *Ohralik* for situations in which the person's vulnerability presents a clear danger of uninformed acquiescence. And, as observed, the Maryland Court of Appeals found that respondent sought out persons marked by similar vulnerability. Nevertheless, we conclude that it would be inappropriate for this court to address the application of DR 2–103(A)(3) to respondent's conduct in the first instance. The Board did not cite or rely upon the rule in its report and recommendation, nor has it been cited in the briefs filed with the court. In the past we have recognized the importance to our task, in these often intractable matters of attorney discipline, of the Board's expertise and the judgment it brings to bear on recommendations it makes to the court. *Cf. In re Haupt,* 422 A.2d 768, 771 (D.C.1980) ("We respect the Board's sense of equity ... unless that exercise of judgment proves to be unreasonable"). Moreover,

respondent has had no opportunity to address the application of DR 2–103(A)(3) to his behavior. We shall, accordingly, remand the matter to the Board for development—with the aid of any additional briefing the Board may request—of the issue whether respondent's conduct, as found by the Maryland court, is embraced by DR 2–103(A)(3). *Cf.* present D.C.Bar R. XI, § 11(f).

*So ordered.*

---

**10.** Rule 7.1(b)(3) carries over DR 2–103(A)(3)    without substantial change.