736 A.2d 339

ATTORNEY GRIEVANCE COMMISSION OF MARYLAND

v.

Keith S. FRANZ and Judson H. Lipowitz.

Misc. AG No. 44, Sept. Term, 1998.

Court of Appeals of Maryland.

Sept. 1, 1999.

754

Melvin Hirshman, Bar Counsel, and Dolores O. Ridgell, Asst. Bar Counsel, for Atty. Grievance Com'n of Maryland.

Melvin J. Skyes, Baltimore, for respondents.

Argued before BELL, C.J., and ELDRIDGE, RODOWSKY, CHASANOW *, RAKER, WILNER and CATHELL, JJ.

BELL, Chief Judge.

The Attorney Grievance Commission of Maryland (the "Commission"), the petitioner, through Bar Counsel and pursuant to Maryland Rule 16–709,[1] filed a Petition for Disciplinary Action against Keith S. Franz and Judson H. Lipowitz, the respondents, alleging that the respondents engaged in misconduct arising out of a two train collision which occurred near Silver Spring, Maryland on or about February 16, 1996. More particularly, the petitioner charged that the respondents violated Rule 7.3[2] of the Maryland Rules of Professional Con-

---

* Chasanow, J., now retired, participated in the hearing of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

1. Maryland Rule 16–709, as relevant, provides:
 "a. Who may file.–Charges against an attorney shall be filed by the Bar Counsel acting at the direction of the Review Board."

2. Rule 7.3, regulating a lawyer's direct contact with prospective clients, provides:

duct, Maryland Rule 16–812, Appendix: Rules of Professional Conduct of the Maryland Rules, and Rule 16–609,[3] proscribing certain transactions involving attorney trust accounts.

We referred the matter to the Honorable John F. Fader II, of the Circuit Court for Baltimore County, to make findings of fact and draw conclusions of law pursuant to Maryland Rule 16–711(a).[4] Following a hearing, Judge Fader filed Findings of Fact and Conclusions of Law as follows:

"The Respondent, Keith S. Franz, was admitted to the Bar of the Court of Appeals of Maryland on November 8, 1979. The Respondent, Judson H. Lipowitz, was admitted to the Bar

---

"(a) A lawyer may initiate in person contact with a prospective client for the purpose of obtaining professional employment only in the following circumstances and subject to the requirements of paragraph (b):

"(1) if the prospective client is a close friend, relative, former client or one whom the lawyer reasonably believes to be a client;

"(2) under the auspices of a public or charitable legal services organization; or

"(3) under the auspices of a bona fide political, social, civic, fraternal, employee or trade organization whose purposes include but are not limited to providing or recommending legal services, if the legal services are related to the principal purposes of the organization.

"(b) A lawyer shall not contact, or send a communication to, a prospective client for the purpose of obtaining professional employment if:

"(1) the lawyer knows or reasonably should know that the physical, emotional or mental state of the person is such that the person could not exercise reasonable judgment in employing a lawyer;

"(2) the person has made known to the lawyer a desire not to receive communications from the lawyer; or

"(3) the communication involves coercion, duress, or harassment."

3. Rule 16–609 provides:

"An attorney or law firm may not borrow or pledge any funds required by these Rules to be deposited in an attorney trust account, obtain any remuneration from the financial institution for depositing any funds in the account, or use any funds for any unauthorized purpose. An instrument drawn on an attorney trust account may not be drawn payable to cash or to bearer."

4. Maryland Rule 16–711(a) provides: "A written statement of the findings of facts and conclusions of law shall be filed in the record of the proceedings and copies sent to all parties."

of the Court of Appeals of Maryland on January 18, 1985. The Respondents are partners in a law firm which maintains its principal office for the practice of law at 101 East Chesapeake Avenue, Towson, Maryland.

"On Friday, February 16, 1996, the Respondents learned that two trains had collided near Silver Spring, Maryland. They spoke by telephone shortly after 10:00 p.m. and decided to go to the scene and investigate the accident. While traveling to the site, they learned that the railroad companies had established headquarters at the Hyatt Hotel in Washington, D.C. (hereafter referred to as "the hotel"). The Respondents changed their plans and traveled to the hotel instead, where they expected there would be a communications center for the media and the National Transportation Safety Board. They thought that would be the best place to start investigating the facts.

"They arrived at approximately 12:15 a.m. on Saturday, February 17, 1996. They found the lobby of the hotel virtually empty and proceeded to the bar area of the hotel where people were watching a televised news report of the accident. The Respondents then encountered several passengers/victims of the train accident who were staying at the hotel. The Respondents initiated in person contacts with some of these individuals. The Respondents identified themselves as attorneys, handed out business cards, and told some of the victims that they would like to represent them. The Respondents obtained names, addresses and telephone numbers for these individuals. The Respondents did not bring retainer agreements or attempt to have any retainer agreement signed at that time. They advised the victims to consult with their families before making a decision as to representation.

"The Respondent subsequently made telephone contact and visited with these prospective clients and their families. The Respondents were engaged by some of the victims and/or their parents as a result of these in person contacts. The individuals contacted were neither close friends, relatives, former clients nor believed to be clients by the Respondents.

The contacts were not made under the auspices of a bonafide political, social, civil, fraternal, employee or trade organization.

"Shortly after they were engaged, the Respondents arranged for loans for these clients from another client of the firm. The loans, for the purchase of clothing destroyed in the accident and other emergency needs, were to be made from funds maintained in the firm's client funds account by way of checks written on this account. In order to facilitate one such loan to a client, Marlene Boyer, whose minor son was hospitalized following the accident, the Respondent, Keith S. Franz, issued a check in the amount of $250 payable to "cash," had a firm employee cash the check and deliver the loan proceeds in cash to Ms. Boyer. Although Mr. Franz issued the check, Mr. Lipowitz was aware of the transaction.

"The Respondents later determined that they had acted improperly by making direct contact with the prospective clients and withdrew as counsel from the representation of all the clients obtained in this manner. They sent to each of the clients who was had engaged them a letter with the identical text as appears in the letter dated March 8, 1996 to Rodney Crawford, attached as "Exhibit A." They made no charge for any of the time they spent or expenses they incurred; and they turned over the results of their investigation and cooperated with new counsel of the clients' choice to accomplish a smooth transition.

"On March 12, 1996, the Respondents self-reported their conduct to Bar Counsel. The Respondents met with Bar Counsel prior to the publication of a newspaper article in which their conduct was described. The actions of the Respondents and the other attorneys following the train accident were the subject of articles in the news media which were critical of the legal profession.

"The Respondents acknowledge that their conduct violated Maryland Rule of Professional Conduct 7.3 and Rule 16–609, pertaining to attorney trust accounts."

The hearing court concluded, "by clear and convincing evidence that the respondents ... violated Maryland Rule of

Professional Conduct 7.3, by initiating in person contacts with prospective clients for the purpose of obtaining professional employment, and Rule 16–609, by drawing or causing to be drawn on an attorney trust account a check payable to 'cash.' " 

Neither party took exceptions to the findings of fact or conclusions of law. Indeed, both the petitioner and the respondents stipulated that "the Respondents, Keith S. Franz and Judson H. Lipowitz, violated Maryland Rule of Professional Conduct 7.3, by initiating in-person contacts with prospective clients for the purpose of obtaining professional employment, and Rule 16–609, by 'drawing or causing to be drawn on an attorney trust account a check payable to cash.' " Consequently, the only issue that this Court is required to decide is the appropriate sanction to be imposed for these violations.

The petitioner seeks for the in person solicitation, as to each respondent, a two-year suspension from the practice of law.[5] It relies on *Attorney Grievance Commission v. Gregory,* 311 Md. 522, 536 A.2d 646 (1988) and *Attorney Grievance Commission v. Weiss,* 300 Md. 306, 477 A.2d 1190 (1984), in both of which this Court addressed the issue of in-person solicitation of cases. The petitioner points out, in particular, that the solicitation in those cases occurred in the courthouse and, in *Gregory,* the Court characterized the persons whom the attorney contacted as "vulnerable," and the situation or circumstances in which the solicitation was made as having the

---

5. As the respondents point out, the petitioner does not mention the 16–609 violation when recommending a sanction, thus suggesting that a reprimand is appropriate for that violation whatever the sanction for the solicitation. That approach seems appropriate since the only violation found was that the respondents caused the check drawn on their trust account to be made payable to "cash." The petitioner has acknowledged:

> "The funds were deposited into the escrow account. However, you are not allowed to write a check to cash. That is the aspect of that rule that was violated, that an instrument to cash was written. It was not in the form of a loan but the aspect of a loan, that in and of itself does not violate any of the rules."

We too will address only the in person solicitation in determining the appropriate sanction.

potential for overreaching or improper conduct.[6] Acknowledging that the sanction in *Weiss* was a reprimand and, in *Gregory*, who had previously been reprimanded for in-person solicitation, a ninety day suspension, the petitioner justifies its request for a more severe sanction in this case on the basis that *Gregory* and *Weiss* served notice on the bar that such conduct would not be tolerated, that the conduct in this case was more reprehensible, and that the vulnerability of the persons solicited here is greater than in either of those cases.[7] Furthermore, comparable sanctions have been imposed for similar conduct by courts in other states. *See In the Matter of the Application for Discipline of Perl*, 407 N.W.2d 678 (Minn. 1987); *Norris v. Alabama State Bar*, 582 So.2d 1034 (Ala. 1991); *In Re Teichner*, 75 Ill.2d 88, 25 Ill.Dec. 609, 387 N.E.2d 265 (1979).[8]

---

**6.** The Court said:

"Respondent, on the other hand, accosted persons known by him to have been charged with an incarcerable criminal offense, who were without counsel, and who had just been advised by a judge concerning the maximum possible penalties upon conviction and the important assistance an attorney could provide. The vulnerability of persons in that situation should have been, and indeed was, obvious to the Respondent. It is just that type of situation, fraught as it is with the potential for overreaching or other improper conduct, which is appropriate for a prophylactic rule prohibiting in-person solicitation of any kind."

*Attorney Grievance Commission v. Gregory*, 311 Md. 522, 532, 536 A.2d 646, 651 (1988).

**7.** The petitioner cites the comment to Rule 7.3, the adoption by several Bar Associations, including the Maryland State Bar Association, of plans to assist victims of disasters and prevent their being taken advantage of during that stressful period and legislation, both federal and State, including some enacted by the Maryland General Assembly, Maryland Code (1989, 1996 Replacement Volume) §§ 10–605.1 and 10–606 of the Business Occupations & Professions Article, to address the problem. As to the former, it points out:

"The harms cited in the rule include harassment of individuals who have already been traumatized by an accident involving themselves or a loved one. This type of conduct also contributes to the public perception of members of the legal profession as mercenaries who take advantage of the victims of tragic accidents for their own profit."

**8.** We agree with the respondents, these out of state cases are not comparable to the facts of the case *sub judice* and thus are not helpful or useful in our analysis.

The respondents believe that the appropriate sanction is a public reprimand. From their perspective, the petitioner's "Draconian recommendation takes no account of guidelines and relevant factors set out in the precedents of this Court and relies on out-of-state case authority that does not support [its] recommendation." The guidelines and relevant factors to which the respondents refer include the purpose of attorney discipline, the absence of any history of being disciplined or charged with violations of the Rules of Professional Conduct, the attorneys' prior professional history,[9] whether the behavior was intentional, premeditated or likely to be repeated, the actual effect or result of the offending behavior, whether the attorneys recognized that they had engaged in misconduct and what they did to rectify it, whether the attorneys cooperated with Bar Counsel, and whether the misconduct involved misrepresentation, dishonesty or moral turpitude. Each of these factors militate in favor of a reprimand, the respondents maintain. Moreover, the respondents assert that they have already suffered for their misconduct.

It is well-settled that the purpose of disciplinary proceedings is to protect the public rather than to punish the erring attorney. *Attorney Grievance Comm'n of Maryland v. Myers,* 333 Md. 440, 446–47, 635 A.2d 1315, 1318 (1994); *Attorney Griev. Comm'n v. Goldsborough,* 330 Md. 342, 364, 624 A.2d 503, 513; *Attorney Griev. Comm'n v. Protokowicz,* 329 Md. 252, 262–63, 619 A.2d 100, 105 (1993); *Attorney Griev. Comm'n v. Myers,* 302 Md. 571, 580, 490 A.2d 231, 236 (1985); *Attorney Griev. Comm'n v. Velasquez,* 301 Md. 450, 459, 483 A.2d 354, 359 (1984); *Attorney Griev. Comm'n v. Montgomery,* 296 Md. 113, 119, 460 A.2d 597, 600 (1983). The public interest is served when this Court imposes a sanction which demonstrates to members of the legal profession the type of conduct that will not be tolerated. *Attorney Griev. Comm'n v.*

---

9. The respondents think it important, not simply that they have no prior disciplinary history, but also that they have been involved in civic activities of recognized social value and given freely of their time and professional expertise in doing so. We do not need to quantify this factor as a mitigator in this case.

*Kerpelman,* 288 Md. 341, 382, 420 A.2d 940, 959 (1980), *cert. denied,* 450 U.S. 970, 101 S.Ct. 1492, 67 L.Ed.2d 621 (1981). By imposing such a sanction, this Court fulfills its responsibility "to insist upon the maintenance of the integrity of the Bar and to prevent the transgression of an individual lawyer from bringing its image into disrepute." *Maryland St. Bar Ass'n v. Agnew,* 271 Md. 543, 549, 318 A.2d 811, 814 (1974). Therefore, the public interest is served when sanctions designed to effect general and specific deterrence are imposed on an attorney who violates the disciplinary rules. *See Protokowicz,* 329 Md. at 262–63, 619 A.2d at 105; *Attorney Griev. Comm'n v. Owrutsky,* 322 Md. 334, 355, 587 A.2d 511, 521 (1991); *Attorney Griev. Comm'n v. Alison,* 317 Md. 523, 540–41, 565 A.2d 660, 668 (1989). Of course, what the appropriate sanction for the particular misconduct is, in the public interest, generally depends upon the facts and circumstances of the case. *Attorney Griev. Comm'n v. Babbitt,* 300 Md. 637, 642, 479 A.2d 1372, 1375 (1984) (the facts and circumstances of a case will determine how severe the sanction should be); *Montgomery,* 296 Md. at 120, 460 A.2d at 600; *Attorney Griev. Comm'n v. Pollack,* 289 Md. 603, 609, 425 A.2d 1352, 1355 (1981). The attorney's prior grievance history, as well as facts in mitigation, constitutes part of those facts and circumstances. *Maryland State Bar Ass'n v. Phoebus,* 276 Md. 353, 362, 347 A.2d 556, 561 (1975).

To be sure, as the petitioner points out, this Court stated, in *Weiss,* that "a persistent or more egregious course of conduct in violation of our disciplinary rules may lead to much more severe sanctions," than the reprimand imposed in that case, citing for that proposition, *Ohralik v. Ohio State Bar Assn.,* 436 U.S. 447, 98 S.Ct. 1912, 56 L.Ed.2d 444 (1978), in which the United States Supreme Court upheld an indefinite suspension of a lawyer who both went to the hospital to seek to represent an accident victim and to the home of her passenger the day after she was released from the hospital; *In Re Campbell,* 95 Idaho 87, 502 P.2d 1100 (1972), in which an attorney was suspended for six months for repeatedly calling on private homes without invitation in an effort to sell estate

planning services; and *Kentucky State Bar Association v. Stivers*, 475 S.W.2d 900 (Ky.1971), *cert. denied*, 406 U.S. 968, 92 S.Ct. 2412, 32 L.Ed.2d 666 (1972), in which an attorney was suspended for one year for knowingly causing a letter to be written to an accident victim for the purpose of solicitation. 300 Md. at 314, 477 A.2d at 1194.

 We have also recognized that an attorney's voluntary termination of the misconduct, accompanied by an appreciation of the serious impropriety of that past conduct and remorse for it, is evidence that the attorney will not hereafter engage in such unethical conduct if permitted to continue practice. *Attorney Grievance Comm'n v. Freedman*, 285 Md. 298, 300, 402 A.2d 75, 76 (1979). The likelihood of repetition is a factor to be considered in determining the appropriate sanction. In *Freedman*, taking that factor into account resulted in a reprimand, rather than a suspension, as the Attorney Grievance Commission had urged. Of course, conduct that is an aberration can be so egregious as to warrant the imposition of a significant sanction. *Attorney Grievance Comm'n of Maryland v. Protokowicz*, 329 Md. 252, 263, 619 A.2d 100, 105 (1993).

██ The hearing court concluded, without specifying the aspect of the rule or the particulars, that the respondents violated Rule 7.3 by "initiating in person contacts with prospective clients for the purpose of obtaining professional employment." Rule 7.3 has two aspects: paragraph (a) permits in person contacts under limited conditions and of a specified category of persons, while paragraph (b) sets out the circumstances in which in person solicitation is proscribed. Violation of the proscriptions contained in paragraph (b) is more serious, and more egregious, than violation of paragraph (a).

The respondents certainly violated paragraph (a), the in person solicitation in which they engaged being of persons other than those permitted to be solicited and under conditions other than those allowed. They also violated, the findings of fact show, paragraph (b)(1). Surely, the respondents reasonably should have known that the victims of a train

accident, within hours of the accident, could not exercise reasonable judgment in employing a lawyer. On the other hand, it is clear from the findings of fact that the respondents did not aggravate this violation by forcing themselves or their communications on those who made known that such contact or communication was not welcome or doing so in a manner that involved coercion, duress and harassment. Indeed, the hearing court found that, although they obtained the names, telephone numbers and addresses of the persons contacted and later called and visited them, resulting in some of them retaining the respondents, the respondents did not, at that time, pressure these prospective clients to engage them as their lawyers. Moreover, the court determined that they did not bring retainer agreements with them.

Thus, while serious, the conduct of the respondents does not rise to the level of egregiousness referred to in *Weiss*. In any event, a public reprimand is a substantial sanction. Subsequent to its decision in *Weiss*, this Court noted, in reprimanding attorneys who had been found to have violated multiple disciplinary rules, including commingling and entering into an impermissible fee arrangement, that a reprimand "will forever be recorded among the reported opinions of this Court" and that "should respondents be involved in any future disciplinary actions [it] will be taken into consideration." *Attorney Grievance Comm'n v. Kemp*, 303 Md. 664, 681, 496 A.2d 672, 681 (1985) *See also Attorney Grievance Comm'n v. Heinze*, 293 Md. 193, 197, 442 A.2d 570, 572 (1982). But there are other mitigating circumstances present in this case.

The respondents, within a short time of its occurrence, recognized the impropriety of their having made direct contact with the victims of the train accident and immediately withdrew as counsel for those clients. They subsequently cooperated with those former clients and new counsel of their choice, turning over the results of their investigation in the process. The respondents neither charged, nor accepted, a fee for the time spent investigating the accident or facilitating, with new counsel, a smooth transition. Nor did they seek, or accept,

reimbursement for the expenses incurred. Moreover, the respondents self reported their misconduct to the petitioner, prior to the publication of a newspaper article that detailed their and other attorney's conduct in connection with the train accident. In addition, the respondents cooperated fully with the petitioner in its investigation leading to these charges being filed. As we have seen, the respondents have never denied their misconduct or sought to minimize it; rather, they have taken full responsibility and stated repeatedly their regret for having engaged in it. Although the hearing court did not make an explicit finding to this effect, it can be inferred from the circumstances that the conduct of the respondents in this case was an aberration and will not be repeated. Finally, there is neither a hint nor suggestion that the respondents' conduct was characterized by misrepresentation, fraud, dishonesty or moral turpitude.

■ Neither of these respondents has ever been the subject of any disciplinary proceedings. Under the circumstances, therefore, we believe the appropriate sanction is a reprimand.

*IT IS SO ORDERED; RESPONDENTS SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING COSTS OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE 16–715(C), FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST KEITH S. FRANZ AND JUDSON H. LIPOWITZ.*