851 A.2d 527

ATTORNEY GRIEVANCE COMMISSION OF MARYLAND

v.

Joseph C. ASHWORTH.

Misc. Docket AG No. 5, Sept. Term, 2003.

Court of Appeals of Maryland.

June 9, 2004.

Melvin Hirshman, Bar Counsel and Dolores O. Ridgell, Assistant Bar Counsel for the Attorney Commission of Maryland, for Petitioner.

Phillip R. Zuber, Esquire, of Sasser, Clagett & Bucher of Upper Marlboro, for Respondent.

Argued before BELL, C.J., RAKER, WILNER, CATHELL, HARRELL, BATTAGLIA and GREENE, JJ.

BELL, Chief Judge.

The Attorney Grievance Commission of Maryland, the petitioner, by Bar Counsel, acting pursuant to Maryland Rule 16–751,[1] filed a Petition For Disciplinary or Remedial Action against Joseph C. Ashworth, the respondent. The petition charged that the respondent violated Rules 1.4, Communication,[2] 1.5, Fees,[3] 1.15, Safekeeping

---

1. Maryland Rule 16–751, as relevant, provides:
 "(a) *Commencement of disciplinary or remedial action.* (1) Upon approval of the Commission. Upon approval or direction of the Commission, Bar Counsel shall file a Petition for Disciplinary or Remedial Action in the Court of Appeals."

2. Rule 1.4 provides:
 "(a) A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.
 "(b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation."

3. Rule 1.5 provides, as relevant:
 "(a) A lawyer's fee shall be reasonable. The factors to be considered in determining the reasonableness of a fee include the following:

property,[4] 8.1, Bar Admission and Disciplinary Matters,[5] and

"(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

"(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

"(3) the fee customarily charged in the locality for similar legal services;

"(4) the amount involved and the results obtained;

"(5) the time limitations imposed by the client or by the circumstances;

"(6) the nature and length of the professional relationship with the client;

"(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

"(8) whether the fee is fixed or contingent."

4. Rule 1.15 provides:

"(a) A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained pursuant to Title 16, Chapter 600 of the Maryland Rules. Other property shall be identified as such and appropriately safeguarded. Complete records of such account funds and of other property shall be kept by the lawyer and shall be preserved for a period of five years after termination of the representation.

"(b) Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this Rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property.

"(c) When in the course of representation a lawyer is in possession of property in which both the lawyer and another person claim interests, the property shall be kept separate by the lawyer until there is an accounting and severance of their interests. If a dispute arises concerning their respective interests, the portion in dispute shall be kept separate by the lawyer until the dispute is resolved."

5. Rule 8.1 provides, as relevant:

"An applicant for admission or reinstatement to the bar, or a lawyer in connection with a bar admission application or in connection with a disciplinary matter, shall not:

\* \* \* \*

"(b) fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter, or knowingly fail to respond to a lawful demand for information from an admissions or

■■■■■■■■■■■■■■■

8.4, Misconduct,[6] of the Maryland Rules of Professional Conduct, as adopted by Maryland Rule 16–812.[7]

■ We referred the case, pursuant to Rule 16–752(a),[8] to the Honorable Sean D. Wallace, of the Circuit Court for Prince George's County, for hearing pursuant to Rule 16–757(c).[9] Following a hearing,[10] at which the respondent

---

disciplinary authority, except that this Rule does not require disclosure of information otherwise protected by Rule 1.6."

6. Rule 8.4, as relevant, provides:

"It is professional misconduct for a lawyer to:

\* \* \* \*

"(b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects;
"(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;
"(d) engage in conduct that is prejudicial to the administration of justice."

7. The petitioner also charged that the respondent "assist[ed] a person who is not a member of the bar in the performance of activity that constitutes the unauthorized practice of law," in violation of Rule 5.5(b), but withdrew it during the evidentiary hearing.

8. Rule 16–752(a) provides:

"(a) Order. Upon the filing of a Petition for Disciplinary or Remedial Action, the Court of Appeals may enter an order designating a judge of any circuit court to hear the action and the clerk responsible for maintaining the record. The order of designation shall require the judge, after consultation with Bar Counsel and the attorney, to enter a scheduling order defining the extent of discovery and setting dates for the completion of discovery, filing of motions, and hearing."

9. Maryland Rule 16–757(c) provides:

"(c) Findings and conclusions. The judge shall prepare and file or dictate into the record a statement of the judge's findings of fact, including findings as to any evidence regarding remedial action, and conclusions of law. If dictated into the record, the statement shall be promptly transcribed. Unless the time is extended by the Court of Appeals, the written or transcribed statement shall be filed with the clerk responsible for the record no later than 45 days after the conclusion of the hearing. The clerk shall mail a copy of the statement to each party."

10. The disciplinary hearing in this case initially was scheduled, with the consent of the parties, for September 30, 2003. On September 4, 2003, the respondent, through counsel filed for bankruptcy, pursuant to

appeared and participated, the hearing court found facts by the clear and convincing standard and drew conclusions of law, as follows.

Chapter 13 of the Bankruptcy Code, 11 U.S.C. § 1301 et seq., and subsequently, on September 22, 2003, filed a Suggestion of Stay, pursuant to § 362(a) of that Code. The respondent also filed, in proper person, a motion for continuance of up to thirty days to obtain counsel in the disciplinary proceedings. Opposing any delay, the petitioner filed an Emergency Motion To Direct The Circuit Court For Prince George's County To Proceed Pursuant To Maryland Rule 16–757 In That Attorney Disciplinary Proceedings Are Exempt Pursuant To 11 U.S.C. § 362(b)(4). After the respondent answered the motion, this Court postponed the pending disciplinary hearing and scheduled a hearing on the suggested stay. Following that hearing, we ordered the disciplinary proceeding to proceed and the hearing to be rescheduled.

We reject the respondent's argument that the automatic stay provided for by 11 U.S.C. 362(a) applies to these proceedings. To be sure, pursuant to § 362(a)(1), as a general rule, the filing of a Chapter 13 bankruptcy petition operates as an automatic stay of administrative proceedings against the debtor. On the other hand, 11 U.S.C. § 362(b) sets forth exceptions to that general rule of automatic stay. Section 362(b)(4), relevant to this case, for example, provides:

"(b) The filing of a petition . . . does not operate as a stay—
* * * *
"(4) under paragraph (1) . . . of subsection (a) of this section, of the commencement or continuation of an action or proceeding by a governmental unit . . . to enforce such governmental unit's . . . police and regulatory power, including the enforcement of a judgment other than a money judgment, obtained in an action or proceeding by the governmental unit to enforce such governmental unit's . . . police or regulatory power[.]"

This provision has been interpreted uniformly to exempt disciplinary proceedings from the automatic stay of § 362(a). *See In re Wade*, 948 F.2d 1122, 1124 (9th Cir.1991); *In re Friedman & Shapiro, P.C.*, 185 B.R. 143, 145 (S.D.N.Y.1995); *In re McAtee*, 162 B.R. 574, 577–78 (N.D.Fla.1993); *In re Williams*, 158 B.R. 488, 491 (Bankr.D.Idaho 1993); *In re Haberman*, 137 B.R. 292, 294–94 (Bankr.E.D.Wis.1992); *In re Fitch*, 123 B.R. 61, 63 (Bankr.D.Idaho 1991); *In re Hanson*, 71 B.R. 193, 194 (Bankr.E.D.Wis.1987); *Cooper v. State Bar*, 43 Cal.3d 1016, 239 Cal.Rptr. 709, 741 P.2d 206, 211 (1987); *Risker v. Commission For Lawyer Discipline*, 94 S.W.3d 625, 632 (Tex.App.2002).

The respondent attempts to restate the question, urging that it is whether a law license represents property of the bankruptcy estate. He argues that if it is, "then no action at all may proceed to deprive its holder and the estate of its value." The respondent also argues that this disciplinary proceeding is the alter ego of a civil action filed in St. Mary's County Circuit Court by the complainant in this case against the respondent. Suffice it to say that we have addressed and answered the pertinent question. A civil action against an attorney by that attorney's client is not, and can not, be the alter ego of disciplinary proceedings.

Roger Seltz, the complainant, on July 18, 2001, consulted the respondent in connection with a contract dispute he had with his former employer, ManTech International ("ManTech"). The written retainer agreement he entered into with the respondent provided that the respondent would provide the required legal services "for an agreed initial retainer of $ 2000.00," and that those services would commence "when Attorneys receive the complete payment of $ 2000.00 which will be billed at $ 150.00 per hour." The retainer agreement also provided:

> "If this matter requires litigation, we will obtain another retainer agreement.... If and when it becomes apparent that the above amount for fees and expenses will be exceeded under this agreement, an additional sum will be set by attorneys."

The complainant paid the respondent the retainer and an initial consultation fee of $150.00. Rather than placing the retainer in his escrow account, where the respondent concedes it should have gone, the respondent placed it in his operating account.

After reviewing the documentation he had received from the complainant and receiving from the complainant approval of a draft that he had been asked to review,[11] the respondent sent a demand letter to ManTech on or about August 17, 2001. Accepting the invitation contained in the ManTech response, the respondent and the complainant met with ManTech representatives on October 23, 2001 to discuss the claims. The meeting lasted three to four hours and, although, according to the complainant, the respondent "did a very good job" of advocating his position, no settlement was reached. The

---

**11.** After approving the final demand letter, the complainant asked the respondent to delay sending the letter until he had received his executive supplemental paycheck, a request with which the respondent complied.

complainant's demand of $ 150,000.00 was met with a counter-offer of only $ 40,000.00.

Following the meeting, the complainant advised the respondent that "I would like to give ManTech my final demand for $ 150,000, or we will sue. If we sue, we should depose the minimum following people ... lets call their bluff." Thereafter, in early December, 2001, the respondent prepared a draft complaint that he asked the complainant to review. When they met a few days later to discuss the draft, they also considered in more detail what would be involved in the litigation process and a new fee arrangement. As to the latter, the respondent indicated that he wanted a thirty three percent share should the case go to litigation, which, at that time, the complainant thought was fair. At the conclusion of the meeting, the complainant expected the complaint to be filed and to be presented with a "new" contingency fee agreement.

The day after that meeting, presumably because the complainant had "flashed the complaint" to a ManTech official he "ran into," ManTech's attorney telephoned the respondent, leaving a message, followed up by a fax, indicating that "ManTech would like to revise its offer to resolve this dispute with your client," and asking that the respondent return the call as soon as possible. Although the respondent received the fax the next day, he neither advised the complainant of its receipt nor provided him with a copy. The respondent did return ManTech's call. There were no discussions of settlement proposals or counter-proposals during that call; it involved "just ManTech's desire to have further settlement conversations after the attorney talked to his 'operational people.' "

Subsequently, the respondent prepared a contingency fee agreement for the complainant to execute. His office apprised the complainant of the intention to file the complaint he had previously reviewed and requested that the complainant come into the office and review and sign the fee agreement. The fee agreement, the complainant was told and the complainant

believed, "called for a contingency fee of 25 percent before suit was filed or 33 percent after it was filed." In fact, the fee agreement contained a typographical error, the inclusion of the word, "not" in the provision relating to the percentage recovery before filing suit. Read literally, that provision "provides that the 'amount of the fee received by Attorneys will be twenty-five percent (25%) of any sums received if the matter is *not* resolved prior to litigation.' " Deletion of the word, "not" results in the agreement reflecting both parties' understanding.

The complainant read and signed the fee agreement. Although he received a copy of the agreement he signed, he never received a fully executed one, as the respondent promised he would provide.

A subsequent discussion between the respondent and Man-Tech's counsel resulted in the scheduling of another settlement meeting and, although neither had settlement authority, they explored the general "ranges at which their clients might be willing to settle." After the respondent advised the complainant of the scheduled settlement meeting, the complainant had second thoughts about paying a 25 percent contingency fee. He indicated that if ManTech was willing to negotiate, the respondent should be entitled to 25 percent only if the settlement amount was $ 180,000.00, an amount more than he was entitled to receive, rather than the $ 150,000.00 demanded. The respondent did not agree.

The respondent and the complainant met to discuss the contingency fee prior to the settlement meeting. At that time, the complainant had rethought his agreement to pay the respondent a 25 percent contingency fee. During their preliminary meeting, the complainant expressed his intention to "unequivocally revok[e]" the contingency fee agreement and to pay the respondent a flat fee consistent with a sliding scale he had developed prior to the meeting. The respondent did not agree, standing instead on the written agreement that the complainant had executed. He also advised the complainant of his right to discharge him. Noting that he wanted the

respondent to represent him at the settlement meeting, the complainant and the respondent shook hands and the respondent continued to represent the complainant at the settlement meeting both parties subsequently attended.

After considering numerous proposals and counter-proposals, the parties settled for $104,000.00. The settlement agreement provided that "each party would pay its own counsel fees and expenses and that the settlement amount would be paid "by check made jointly payable to [the complainant] and [the respondent]." ManTech sent the settlement check, payable as agreed, to the respondent. He deposited the check in his escrow account, without obtaining the complainant's signature. The bank negotiated the check, nevertheless.

When the complainant received a check from the respondent in the amount of $78,0000.00, along with a letter indicating that he had deducted his 25 percent contingency fee, which constituted the only billing statement, breakdown of hours, or written justification or explanation of the fee charged that the respondent provided the complainant, the complainant contacted the respondent to protest. They agreed to meet to discuss the matter.

Although the respondent advised the complainant that he should have counsel, the complainant attended the meeting unrepresented. No agreement was reached; the respondent rejected the complainant's position that he could, and did, revoke, the contingency agreement. Maintaining that the agreement was binding, he advised the complainant, "I have the check in escrow and I can wait." The complainant later negotiated the settlement check, but only after putting the respondent on notice that he was not thereby accepting the validity of the contingency fee agreement. Subsequently, the respondent withdrew from the escrow account $10,000.00 of the disputed $26,000.00 fee. He made subsequent withdrawals against that amount after the complainant filed this complaint with the petitioner and after the respondent had, in response to the petitioner's inquiry about the complaint, stated: "this case is nothing more than a clear and bitter dispute

over fees.... I am willing, however, to have this fee dispute resolved through binding arbitration administered by the Maryland Bar Association."

The respondent spoke with the petitioner's investigator concerning his handling of the fees charged the complainant. In response to the investigator's inquiry, he said that he had deposited the initial retainer in his escrow account and that he kept the disputed $26,000.00 fee in that account. The respondent promised to, but did not, provide records to substantiate those claims.

Based on these findings, the hearing court concluded that the respondent violated Rules 1.4, 1.15, 8.1 and 8.4(c) and (d).

The Rule 1.4 violation was based solely on the respondent's failure to advise the complainant "of the status of his initial $2,000.00 retainer at any time, and most especially at the time when the fee was converted to a contingency arrangement." Noting that "the new terms were clearly understood and agreed to by the client when he signed the second retainer agreement," the hearing court expressly did not find that the respondent's violation pertained to the change of fee agreement. Nor was the hearing court convinced that the respondent failed to communicate to the complainant developments in the negotiation with ManTech. By depositing the initial retainer in his operating account, rather than the escrow account, and, although correctly deposited in the escrow account, by making disbursements from the disputed contingency fee, knowing that it was disputed, the hearing court determined that the respondent violated Rule 1.15(a) and (c). His failure to notify the complainant when the settlement check was received constituted, it concluded, a violation of section (b) of that Rule. The hearing court rejected the petitioner's argument that the respondent's failure to provide an accounting also constituted a violation of Rule 1.15(b), pointing out that "no request was made for such an accounting as is required by the Rule."

The hearing court found a violation of Rule 8.1 because the respondent did not provide the investigator with the informa-

tion he requested and which the respondent promised to deliver, thus, "failing to respond to [his] verbal and written requests for information. As indicated, the respondent told the complainant and the petitioner's investigator that he was holding the disputed fee in escrow, when that was not the case. The hearing court concluded that, "since these statements were factually incorrect and the Respondent knew or should have known that they were incorrect," by making them, the respondent violated Rule 8.4(c). He violated Rule 8.4(d) "by not holding the disputed funds in escrow and, thus making them unavailable upon any resolution of that dispute." Nevertheless, the hearing court emphasized that it did not find that the respondent violated the provision in any other regard.

Both the petitioner and the respondent have taken exceptions. The petitioner's exception challenges the hearing court's failure to find a violation of Rule 1.5(a). A fee of $26,000.00 was unreasonable, it argues, because "[t]he only services provided after the contingency fee agreement was signed on December 13, 2001, were for Respondent's conferences with the Complainant and the Respondent's attendance at one meeting with the former employer's representatives on December 19, 2001, which, according to Respondent's records, lasted approximately 3.7 hours." The petitioner concludes that, although perhaps not unreasonable when signed, it became unreasonable when the matter settled within days of the new agreement and when the contingency, litigation, did not occur.

■ In concluding that Rule 1.5(a) had not been violated, the hearing court reasoned:

"Bar counsel's argument ignores the reality that attorneys with excellent skills and reputations often can obtain satisfactory settlements with the expenditure of less effort than those lawyers without such reputation and skill. The court rejects those arguments and concludes that Respondent did not charge an unreasonable fee.

"Rule 1.5 provides that in determining the reasonableness of the fee, a number of factors are to be considered beyond

simply the time and labor required. Among those factors relevant in this case are: the skill requisite to perform the legal services properly; the fee customarily charged in the locality for similar legal services; the amount involved and the results obtained; the experience, reputation, and ability of the lawyer performing the services; and whether the fee is fixed or contingent. In this case, Respondent had over twenty years of experience, specializing mainly in labor and employment law. The client retained him because of that expertise. Respondent ably represented his client in preparing both a lengthy, detailed demand letter and a draft complaint, both of which brought ManTech to the settlement table. At two settlement negotiations sessions, respondent strongly advocated for his client, and ultimately, was able to obtain a satisfactory settlement for his client. A twenty-five percent contingency fee for cases of this type is both customary and reasonable. Thus the court concludes that Respondent did not violate this provision by charging an unreasonable fee."

We agree. The petitioner's exception is overruled.

The respondent's exceptions are to both the hearing court's findings of fact and conclusions of law. With respect to the former, while not excepting to the finding that the retainer was improperly deposited in the respondent's operating account, but noting that the hearing court made "no specific finding regarding why," he submits that the testimony indicates that the improper deposit was made in error, not intentionally. Conceding that the information requested by the petitioner's investigator was not timely provided, the respondent maintains that it was provided during the course of the disciplinary proceedings. He argues, therefore, that "the finding that the information was 'never provided' is not supported by the evidence."

The respondent's exception to the hearing court's conclusion of law relates to the conclusion, with respect to Rule 1.15(b), that the complainant was not notified of the receipt of the settlement check. His complaint is that because there was testimony that the respondent told his office manager to

contact the complainant and have him sign the check, the office manager testified that she called him, and there was a conversation with the complainant within seven days of the check's receipt, "the evidence fails to sustain by clear and convincing evidence a violation of Rule 1.15(b)."

 There is ample evidence to support the findings of fact made by the hearing court and, just as important, those factual findings justify the conclusions drawn from them. Exceptions will be overruled when the findings are not clearly erroneous. *Attorney Grievance Comm'n v. McCoy*, 369 Md. 226, 235, 798 A.2d 1132, 1137 (2002). *See Attorney Grievance Comm'n v. Garland*, 345 Md. 383, 392, 692 A.2d 465, 469 (1997) (citing *Attorney Grievance Comm'n v. Goldsborough*, 330 Md. 342, 347, 624 A.2d 503, 505 (1993)).

Turning to the question of the appropriate sanction,[12] both the petitioner and the respondent offer a recommendation. The petitioner believes that disbarment is the required sanction. In support of its recommendation, it submits:

"The Respondent engaged in dishonest and deceptive conduct with regard to the disputed fee, failed to hold those funds in trust as required by the Maryland Rules of Professional Conduct and was untruthful when questioned about the funds. Respondent failed to respond to lawful demands for information from Bar Counsel's office. This [C]ourt has held on numerous occasions that intentional dishonest conduct will result in disbarment absent compelling, extenuating circumstances. The Respondent presented no evidence which would constitute mitigation. *Attorney Grievance Commission v. Vanderlinde*, 364 Md. 376, 418, 773 A.2d 463, 488 (2001)."

---

**12.** The respondent moved, by motion filed on May 5, 2004, to remand these proceedings to the Circuit Court "for consideration of new evidence in mitigation of the allegations raised in this matter, specifically new evidence that the Respondent suffered from mental illness at the time that the facts in this case occurred." The motion is denied.

The respondent, on the other hand, argues for an indefinite suspension with the right to reapply after a short period, in 60 days. He supports his argument by pointing out that:

"This case is not one of blatant misappropriation or one where there is a pattern of deceitful conduct. The conduct here, except arguably for the two misstatements, does not involve violations arising from deliberation and calculation, where the result achieved was intended, which makes [the respondent's] actions less culpable for purposes of sanctions."

The respondent also submits that his improper deposit of the retainer was an error, not intentional, which is relevant on the issue of the sanction for misappropriation. Moreover, although condoning the violation, the respondent contends that there was no injury caused by his failure to comply with Rule 1.15(c). This is so, he says, because, in essence, by determining that the contingency fee charge was not unreasonable and that the agreement was not unreasonable, the hearing court found that the complainant owed the fee. Conceding the existence of aggravating circumstances, he has twice been reprimanded, he points out that "[n]either involved dishonesty or the integrity of escrow accounts." In addition, the violations here concern one client and one case, a factor that should be considered mitigating, and do not amount to or approach the conduct in the cases that this Court has recently determined to be such as to warrant disbarment.[13]

The purpose of attorney disciplinary proceedings is well settled: to protect the public and not to punish the erring attorney. *See Bar Ass'n of Baltimore City v. Marshall,* 269 Md. 510, 519, 307 A.2d 677, 682 (1973), in which, thirty years

---

13. The respondent specifically references *Attorney Grievance Comm'n v. Braskey,* 378 Md. 425, 461, 836 A.2d 605, 627 (2003); *Attorney Grievance Comm'n v. Cafferty,* 376 Md. 700, 831 A.2d 1042 (2003); *Attorney Grievance Comm'n v. Gallagher,* 371 Md. 673, 810 A.2d 996 (2002); *Attorney Grievance Comm'n v. Lane,* 367 Md. 633, 648, 790 A.2d 621, 629 (2002); *Attorney Grievance Comm'n v. McLaughlin,* 372 Md. 467, 499–501, 813 A.2d 1145, 1164–65 (2002); *Attorney Grievance Comm'n v. Vanderlinde,* 364 Md. 376, 773 A.2d 463 (2001); *Attorney Grievance Comm'n v. Wallace,* 368 Md. 277, 293, 793 A.2d 535, 545 (2002).

ago, we stated "that the purpose of disciplinary actions ... is not to punish the offending attorney, as that function is performed in other types of legal proceedings, but it is to protect the public from one who has demonstrated his unworthiness to continue the practice of law." More recently, we stated the rule in *Attorney Grievance Comm'n v. Davis,* 375 Md. 131, 166–67, 825 A.2d 430, 451 (2003). There, we opined:

> "Our consideration of the appropriate disciplinary measure to be taken in any given case involving violation of the Rules of Professional Conduct is guided by our interest in protecting the public and the public's confidence in the legal profession. *Attorney Grievance Comm'n v. Powell,* 369 Md. 462, 474, 800 A.2d 782, 789 (2002). The purpose of such proceedings is not to punish the lawyer, but should deter other lawyers from engaging in similar conduct. *[Attorney Grievance Comm'n v.] Mooney,* 359 Md. [56,] 96, 753 A.2d [17,] 38 [2000]. The public is protected when we impose sanctions that are commensurate with the nature and gravity of the violations and the intent with which they were committed. *Attorney Grievance Comm'n v. Awuah,* 346 Md. 420, 435, 697 A.2d 446, 454 (1997)."

It is equally well settled that the decision whether to impose a sanction in a particular case and, if so, what the sanction should be, does, and must, depend on the facts and circumstances of that case. That decision is informed and guided, however, by certain factors: "the nature and gravity of the violations and the intent with which they were committed." *Awuah,* 346 Md. at 435, 697 A.2d at 454. *See Attorney Grievance Comm'n v. Pennington,* 355 Md. 61, 77–78, 733 A.2d 1029, 1037–38 (1999); *Attorney Grievance Comm'n v. Milliken,* 348 Md. 486, 519, 704 A.2d 1225, 1241 (1998); *Attorney Grievance Comm'n v. Montgomery,* 318 Md. 154, 165, 567 A.2d 112, 117 (1989); the attorney's prior grievance history, including whether there have been prior disciplinary proceedings, the nature of the misconduct involved in those proceedings and the nature of any sanctions imposed, as well as any facts in mitigation, *Attorney Grievance Comm'n v. Franz,* 355 Md. 752, 762, 736 A.2d 339, 344 (1999); *Maryland State Bar*

*Ass'n v. Phoebus*, 276 Md. 353, 362, 347 A.2d 556, 561 (1975); whether the attorney is remorseful for the misconduct, *Attorney Grievance Comm'n v. Wyatt*, 323 Md. 36, 38, 591 A.2d 467, 468 (1991), and the likelihood of the conduct being repeated. *Attorney Grievance Comm'n v. Freedman*, 285 Md. 298, 300, 402 A.2d 75, 76 (1979). With respect to the latter factor, the likelihood of recidivism, we have held that the voluntary termination of the charged misconduct, when accompanied by an appreciation of the impropriety of having engaged in it and remorse for having done so, may be evidence that the attorney will not again engage in such misconduct. *Freedman*, 285 Md. at 300, 402 A.2d at 76. *See Attorney Grievance Comm'n v. McClain*, 373 Md. 196, 211–12, 817 A.2d 218, 227–28 (2003); *Franz*, 355 Md. at 762, 736 A.2d at 344. *See also Attorney Grievance Comm'n v. Harris–Smith*, 356 Md. 72, 90–91, 737 A.2d 567, 577 (1999) (acknowledging the principal objective of sanction in that case, deterrence of other non-admitted attorneys from undertaking a federal practice from an office in Maryland, was achieved when the firm dissolved after bar counsel's investigation commenced).

▆▆▆ To be sure, the conduct in which the respondent was found to have engaged and the rule violations it was found to constitute are quite serious and can not be condoned, however, neither the conduct nor the rule violations rises to the level of the conduct or the violations warranting disbarment. The Rule 8.4 violations were found because of the respondent's misrepresentation of the status of disputed funds, because he advised the complainant and Bar Counsel that they were in escrow when he knew they were not and because he did not so hold them as he should have done. The hearing court rejected, however, the argument that the respondent engaged in misconduct—misleading the complainant regarding the status of settlement negotiations and obtaining a new settlement agreement—to "capitalize on the situation." Finding that argument to be unsupported by the evidence, it found:

> "Respondent did advise the client of the negotiation developments and that the second fee agreement was entered into by the parties for their mutual benefit in light of the

circumstances. Respondent's efforts under the initial hourly agreement had not achieved settlement and the client was unwilling to expend any more money in advanced fees. There was no assurance that settlement would be achieved in the near future, and there was a good possibility that substantial time and effort would be required in pursuing litigation."

Furthermore, while the hearing court found a violation of Rule 1.15(b) when the respondent did not advise the complainant of the receipt of the settlement check, it rejected the petitioner's contention that the failure of notice and the failure to obtain his endorsement were "motivated by fraud or dishonesty." And the hearing court, as the respondent argues, found that the respondent was entitled to the disputed fee, which it determined not to be unreasonable and to have been appropriately charged in a contingency fee agreement that was negotiated and voluntarily signed by the complainant.

Under the circumstances, the appropriate sanction is an indefinite suspension from the practice of law.

IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING COSTS OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE 16–761, FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST JOSEPH C. ASHWORTH.