863 A.2d 312

**ATTORNEY GRIEVANCE COMMISSION OF MARYLAND**

v.

**Francis MacDOUGALL.**

**Misc. Docket AG No. 59 Sept. Term, 2003.**

Court of Appeals of Maryland.

Dec. 13, 2004.

Melvin Hirshman, Bar Counsel, John C. Broderick, Asst. Bar Counsel for Atty. Grievance Com'n, for petitioner.

Francis MacDougall, Towson, for respondent.

Argued before BELL, C.J., RAKER, WILNER, CATHELL, HARRELL, BATTAGLIA and GREENE JJ.

BELL, C.J.

The Attorney Grievance Commission of Maryland, the petitioner, by Bar Counsel, acting pursuant to Maryland Rule 16–751,[1] filed a Petition For Disciplinary or Remedial Action against Francis MacDougall, the respondent. The petition charged that the respondent violated Rules 1.3, Diligence,[2] 1.4, Communication,[3] 1.5, Fees,[4] 1.16, Declining or Terminating

---

1. Maryland Rule 16–751, as relevant, provides:

   "(a) *Commencement of disciplinary or remedial action.* (1) Upon approval of the Commission. Upon approval or direction of the Commission, Bar Counsel shall file a Petition for Disciplinary or Remedial Action in the Court of Appeals."

   *See* Rule 16–743, which specifically provides that "[t]he Commission may (1) approve the filing of a Petition for Disciplinary or Remedial Action."

2. Rule 1.3 requires "[a] lawyer [to] act with reasonable diligence and promptness in representing a client."

3. Rule 1.4 provides:

   "(a) A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.

   "(b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation."

4. Rule 1.5 provides, as relevant:

   "(a) A lawyer's fee shall be reasonable. The factors to be considered in determining the reasonableness of a fee include the following:

   "(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

   "(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

   "(3) the fee customarily charged in the locality for similar legal services;

   "(4) the amount involved and the results obtained;

   "(5) the time limitations imposed by the client or by the circumstances;

   "(6) the nature and length of the professional relationship with the client;

   "(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

   "(8) whether the fee is fixed or contingent."

Representation,[5] 3.4, Fairness to Opposing Party and Counsel,[6] 8.1, Bar Admission and Disciplinary Matters,[7] and 8.4, Misconduct,[8] of the Maryland Rules of Professional Conduct, as adopted by Maryland Rule 16–812.[9]

We referred the case, pursuant to Rules 16–752(a),[10] to the Honorable Thomas J. Bollinger, Sr., of the Circuit Court for

---

5. Rule 1.16 provides, as relevant:
\*      \*      \*      \*      \*      \*
"(d) Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee that has not been earned. The lawyer may retain papers relating to the client to the extent permitted by other law."

6. Pursuant to Rule 3.4,
"A lawyer shall not:
\*      \*      \*      \*      \*      \*
"(c) knowingly disobey an obligation under the rules of a tribunal except for an open refusal based on an assertion that no valid obligation exists."

7. Rule 8.1 provides, as relevant:
"An applicant for admission or reinstatement to the bar or a lawyer in connection with a bar admission application or in connection with a disciplinary matter, shall not:
\*      \*      \*      \*      \*      \*
"(b) fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter, or knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority, except that this Rule does not require disclosure of information otherwise protected by Rule 1.6."

8. Rule 8.4, as relevant, provides:
"It is professional misconduct for a lawyer to:
\*      \*      \*      \*      \*      \*
"(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;
"(d) engage in conduct that is prejudicial to the administration of justice."
\*      \*      \*      \*      \*      \*

9. The petitioner also charged that the respondent "assist[ed] a person who is not a member of the bar in the performance of activity that constitutes the unauthorized practice of law," in violation of Rule 5.5(b), but withdrew it during the evidentiary hearing.

10. Rule 16–752(a) provides:

Baltimore County, for hearing pursuant to Rule 16–757(c).[11] Following a hearing, at which the respondent appeared and participated, the hearing court found, on "the evidence presented at that time, as well as the admissions made by the Respondent in his response to the Petition for Disciplinary Action," facts by the clear and convincing standard and drew conclusions of law, as follows.

The respondent, a sole practitioner, was, pursuant to wills he drafted for Theodore and Naomi Egorin, one of three co-personal representatives of their estates, the other two being the surviving child and heir of the decedents, Samuel Mervis Egorin, and Donn Weinberg, Esquire. He was also attorney for each estate, having been retained as such by the personal representatives. Each will, after making specific bequests of personal property to Samuel Egorin and, in the case of Mrs. Egorin, a small cash bequest to her housekeeper, bequeathed the residue of the estate to a testamentary trust. The co-personal representatives of the estates were appointed co-trustees of those trusts. The wills, the estates for which had an estimated net value of $ 150, 000, were admitted to probate in 1999.

The respondent's services for the first two years or so after the estates were opened were generally acceptable to the co-

---

"(a) Order. Upon the filing of a Petition for Disciplinary or Remedial Action, the Court of Appeals may enter an order designating a judge of any circuit court to hear the action and the clerk responsible for maintaining the record. The order of designation shall require the judge, after consultation with Bar Counsel and the attorney, to enter a scheduling order defining the extent of discovery and setting dates for the completion of discovery, filing of motions, and hearing."

11. Maryland Rule 16–757(c) provides:
"(c) Findings and conclusions. The judge shall prepare and file or dictate into the record a statement of the judge's findings of fact, including findings as to any evidence regarding remedial action, and conclusions of law. If dictated into the record, the statement shall be promptly transcribed. Unless the time is extended by the Court of Appeals, the written or transcribed statement shall be filed with the clerk responsible for the record no later than 45 days after the conclusion of the hearing. The clerk shall mail a copy of the statement to each party."

personal representatives. They apparently communicated with respondent on a fairly frequent basis, "to review the estate matters, authorize payments of estate debts, review the estate security portfolio and co-sign those estate checks necessary for the payment of debts." Although, during that period, "[i]t was not uncommon ... for [the respondent] not to answer his phone," he generally returned calls within twenty-four (24) hours and he was prompt in cooperating to arrange meetings of the co-personal representatives, usually held at co-personal representative Weinberg's office.

The respondent was paid, with the approval of the Orphans' Court, counsel fees of $ 10,000, $7500 from the Naomi Egorin' estate and $2500 from the Theodore Egorin estate. These fees were in lieu of commissions payable to him as a co-personal representative.[12] "The parties agree that the Respondent comported himself properly insofar as his taking of a fee for his services was done with the approval of the Orphans' Court."

Beginning in the second half of 2002, the respondent ceased returning calls from his co-personal representatives in a timely manner and his relationship with them "changed significantly." Indeed, as his response to the Petition for Disciplinary Action and his testimony at the hearing admit, "[h]e failed to return calls from either or both of the co-personal representatives and failed to answer questions relating to his services to the estate and his actions as required as a co-personal representative." Samuel Egorin testified consistently, that the respondent had not communicated with him directly since July 2002, when he delivered to him an insurance policy on which a claim had to be made. While the respondent prepared formal accountings with respect to the estates and filed them with the Register, "he failed to give any informal accounting as to the assets of the estates subject to distribution." Moreover, the efforts of the co-personal representatives to meet with the

---

12. The respondent filed, in February 2001, Petitions for Counsel Fee and Counsel Fee in Lieu of Commissions in both estates. These petitions were approved by orders issued by the Orphans' Court.

respondent were frustrated. Another example of the non-communication between the respondent and his co-personal representatives was his failure to explain his decision not to distribute trust funds to Samuel Egorin to defray expenses incurred by his youngest daughter for hospitalization and treatment. Although aware of the request for distribution for that purpose, the respondent did not inform the beneficiary or the other co-personal representative of his decision to refuse the distribution in favor of retaining the money in anticipation of the need to pay future educational expenses, much less explain it to them.

The respondent was informed on two occasions by Bar Counsel, by letters dated December 10, 2002 and January 7, 2003, respectively, that a complaint had been filed against him and, on each occasion, Bar Counsel asked that the respondent respond. In the January letter, which enclosed the December letter, the respondent was advised that failure to respond may be a separate and distinct violation of the Rules of Professional Conduct for violation of Rule 8.1. Although the respondent responded to Bar Counsel's letters, he did not timely respond to either letter, within the fifteen days allowed in the December letter or within the ten days prescribed by the January letter. In his response, by letter dated February 13, 2003, the respondent acknowledged receipt of Bar Counsel's correspondence and, without offering any explanation or excuse, conceded his unresponsiveness. With regard to the allegation that insurance proceeds owed to the Estate of Theodore Egorin had been abandoned to the State, the respondent, while admitting that the application for proceeds had not been filed after death, maintained that the proceeds had not been abandoned, claim for them having been made to Prudential Financial, where the funds had been maintained in the Abandoned Property Office of Prudential Insurance Company, and that the proceeds were expected within two to three weeks. The respondent met with Bar Counsel's investigator. Although admitting to heart problems throughout his life, after reviewing his medical history, the respondent acknowledged that his 1996 heart operation was successful and that he sees

his cardiologist only once every three years and has no other health problems. The respondent also does not suffer from alcohol, psychological or physiological problems.

The respondent informed the petitioner's investigator that he had been requested, in writing, by both regular and certified mail, through his co-personal representatives, to turn over all documents relating to the estates to a substitute attorney and that he had refused to do so. The respondent indicated that he would resign as counsel only after the estates were closed. He maintained that he had a right to so proceed, because the decision of the co-personal representatives with regard to the firing of counsel must be unanimous and that, as a personal representative, he was not prepared to vote with the other two. Although it was an option, as the respondent pointed out, no attempt had been made to that point to obtain the respondent's removal through court action.

At the time of the hearing, the respondent was not a trustee under the trusts set up under the Egorin wills and the Fourth and Final Accountings in the Estates of Naomi Egorin and Theodore Egorin had been filed.

The hearing court concluded that the respondent violated four of the seven rule violations charged: Rule 1.3, Rule 1.4(b),[13] Rule 8.1(b) and 8.4(d). The hearing court characterized the violations it found as "technical," noting that it "finds that the Respondent has not exhibited any dishonest conduct or any interference with the administration of justice." On the other hand, the alleged violation of Rule 3.4, it found, had been abandoned during the disciplinary proceedings and the alleged violations of Rules 1.5 and 1.16 had not been proven by clear and convincing evidence.

As to Rule 1.5, the hearing court explained:

"The amount of the fee that was requested and received by the Respondent was approved by the Orphans' Court of

---

13. The petitioner charged the respondent with a violation of Rule 1.4(a), as well as Rule 1.4(b). The hearing court made no finding as to the former.

Baltimore County after proper application to that court. This court finds that any inappropriateness of that fee should rest with the Orphans' court of Baltimore County. The Court further finds that the fee approved and received is less than the maximum statutory amount that could have been received by the Respondent had he completed the finalization of the estate[s]."

The chancellor's reasoning as to the asserted violation of Rule 1.16 is related: "any fee to be retained was under the supervision and jurisdiction of the Orphans' Court of Baltimore County. In addition, the court finds that the Respondent complied with the Order of the Orphans' Court and surrendered the files in this matter when so ordered."

As indicated, the respondent does not dispute that he violated Rules 8.1(b) and 8.4(d), and, in fact, admits that he did. As to Rule 1.3, the hearing court concluded that "there was a technical violation," the respondent having failed diligently to pursue the legal matters with which he was entrusted. Rule 1.4 was violated, the hearing court determined, by the respondent's "failure to adequately communicate to his co-trustees regarding the representation of the estate."

█ The petitioner excepts to the hearing court's failure to find violations of Rules 1.4(a), 1.5(a) and 1.16(d). It maintains, as to the Rule 1.4(a) charge, that the same evidence that justified the finding of a subsection (b) violation also supported violation of subsection (a). We agree. The hearing court found not only that the respondent had failed to return calls from his co-personal representatives and answer questions relating to his services to the estates, but that the respondent admitted those failures. The petitioner's exception to the failure to find a violation of Rule 1.4(a) is sustained.

We reach a different conclusion with respect to the Rule 1.5(a) and 1.16(d) findings. Maryland Cod e (1974, 2001 Replacement Volume) § 7–602 of the Estates and Trusts Article, as relevant, provides:

"(a) An attorney is entitled to reasonable compensation for legal services rendered by him to the estate and/or the personal representative.

"(b) Upon the filing of a petition in reasonable detail by the personal representative or the attorney, the court may allow a counsel fee to an attorney employed by the personal representative for legal services. The compensation shall be fair and reasonable in the light of all the circumstances to be considered in fixing the fee of an attorney."

In this case, the respondent sought, and received, Orphans' Court approval for the counsel fees he took. Although it could have been, *Wright v. Nuttle,* 298 A.2d 389, 390, 267 Md. 698, 701 (1973) (appeal will normally lie from an order of the orphans' court granting or denying allowance of a fee to counsel for a personal representative), that court's allowance of the counsel fees was neither appealed, nor, except in these proceedings, challenged. It is well settled that an award of counsel fees for a personal representative will not be disturbed in the absence of proof of abuse of discretion. *Wolfe v. Turner,* 299 A.2d 106, 109, 267 Md. 646, 653 (1973). Here, the exercise of its discretion by the Orphans' Court has not been challenged and, thus, has not been, and could not be, on this record, shown to have been abused.

The petitioner's Rule 1.16(d) charge proceeds on the premise that the respondent wrongfully and repeatedly failed "to turn over documents of the estates and trusts to his co-personal representatives and co-trustees, and successor counsel, Stuart Rombro, Esquire." The respondent's response, as it has always been, is that he had not been, and, indeed, could not have been, terminated as the attorney for the estates until there was an order of the Orphans' Court to that effect. He argues that he could not have been terminated without his consent, the wills requiring unanimity, and he did not agree with the other two co-personal representatives that he should be removed. In support of his position, the respondent points out:

"By such unanimous action the three co-personal representatives retained the services of Respondent to act as attorney for the estate[s]. All three co-personal representatives signed each of the documents filed with the Register of Wills. All three personal representatives were required to sign each of the checks disbursing funds from the estate[s]. All three personal representatives had to agree to the price and terms by which the decedents' residence was sold."

Concluding that "all three personal representatives would have to agree to fire an attorney whom they had hired," the respondent relies on Maryland Code, § 6–203 of the Estates and Trusts Article. That statute provides:

"(a) When two or more persons are appointed co-personal representatives, the concurrence of all is required on all acts connected with the administration and distribution of the estate.

"(b) The provisions of subsection (a) of this section do not apply if:

"(1) The act involved is receiving or receipting for property due the estate;

"(2) All personal representatives cannot readily be consulted in the time reasonably available for emergency action;

"(3) A personal representative has validly delegated to a copersonal representative his power to act;  or

"(4) The will or a statute provides otherwise.

"(c) Persons dealing with a copersonal representative without knowledge that he is not the sole personal representative are as fully protected as if the person with whom they dealt had been the sole personal representative."

The respondent acknowledges that he was obligated to turn over the estates' records when the Orphans' Court directed his removal, which it did. He maintains, however, that he complied with that directive by turning over all of the files to the then duly appointed personal representatives of each of the estates. More particularly, he explains:

"Before the date of the Orphans' Court hearing, no proper direction had been given to Respondent either relieving him of his position as co-personal representative or attorney for the estates. Respondent complied with the direction to turn over files within minutes of the proper direction being given. He fully complied with Rule 1.16(d)."

The hearing court agreed with the respondent. On this record, we do not believe that it erred. There is ample support for the facts on which the court's conclusion is based. *Attorney Grievance Comm'n v. Ashworth* 381 Md. 561, 575, 851 A.2d 527, 535 (2004). *See Attorney Grievance Comm'n v. McCoy*, 369 Md. 226, 235, 798 A.2d 1132, 1137 (2002). *Attorney Grievance Comm'n v. Garland*, 345 Md. 383, 392, 692 A.2d 465, 469 (1997) (citing *Attorney Grievance Commn. v. Goldsborough*, 330 Md. 342, 347, 624 A.2d 503, 505 (1993)).

■ Left for determination is the appropriate sanction. The petitioner recommends an indefinite suspension with the right to apply for reinstatement to the bar after sixty (60) days. This is necessary, it maintains, because, by not offering mitigation, an explanation or excuse for his various failures, the respondent has not demonstrated that he appreciates the seriousness of the violations and, more important, a commitment to avoiding their repetition. The petitioner is concerned more specifically that, without a requirement that the respondent apply for reinstatement, which, unlike reinstatement following a suspension for a definite period, see Maryland Rule 16–781(e),[14] requires the applicant to supply information

---

14. Maryland Rule 16–781(e) provides:

"(e) *Expedited Reinstatement.* If the petitioner is an attorney who has been suspended for a definite period and the period has elapsed, Bar Counsel may consent to reinstatement by filing with the Clerk of the Court of Appeals a written notice that Bar Counsel is satisfied that the attorney has complied in all respects with the provisions of Rule 16–760 and with the terms and conditions of the order imposing the suspension. Upon receiving Bar Counsel's consent, the Clerk shall proceed in accordance with the applicable provisions of section (*l*) of this Rule. If Bar Counsel does not consent, Bar Counsel shall respond to the petition in accordance with section (f) of this Rule and shall state the particular grounds for withholding consent. The

necessary to determine whether the criteria and factors prescribed by Maryland Rule 16–781(g) have been met, the Court may not be able, in good faith, to determine whether the respondent would be able to re-enter the practice, having addressed the shortcomings revealed by this case and, thus, meet its responsibility to protect the public.

For his part, the respondent asks only that we recognize that "none of the actions for which he might be disciplined resulted in any harm befalling Samuel Egorin, his family, or the estates," and that we understand the reasons for the substantive decisions he made. He does not directly recommend a sanction. Moreover, when asked at the hearing whether he had "learned the lesson" of the proceedings, rather than answer in the affirmative, he could not state that he would not react the same way should another comparable situation arise. He had no explanation for the failures and provided no other mitigation.

■ The purpose of the sanction imposed on an attorney following disciplinary proceedings is to protect the public rather than to punish the attorney who engages in misconduct, and the decision as to sanction in a particular case does, and must, depend on the facts and circumstances of that case. *Attorney Griev. Comm'n v. Santos,* 370 Md. 77, 88–89, 803 A.2d 505, 511–12 (2002); *Attorney Grievance Comm'n v. Barneys,* 370 Md. 566, 577–78, 805 A.2d 1040, 1046–47 (2002); *Attorney Griev. Comm'n v. Garfield,* 369 Md. 85, 98, 797 A.2d 757, 764 (2002). *See Attorney Griev. Comm'n of Maryland v. Hayes,* 367 Md. 504, 519, 789 A.2d 119, 129 (2002); *Attorney Griev. Comm'n of Maryland v. Jeter,* 365 Md. 279, 290, 778 A.2d 390, 396 (2001); *Attorney Griev. Comm'n of Maryland v. Tolar,* 357 Md. 569, 585, 745 A.2d 1045, 1053 (2000); *Attorney Griev. Comm'n v. Franz,* 355 Md. 752, 761, 736 A.2d 339, 344 (1999); *Attorney Griev. Comm'n v. Ober,* 350 Md. 616, 631–32, 714 A.2d 856, 864 (1998); *Attorney Griev. Comm'n v. Hamby,*

processing fee required by section (b) of this Rule does not apply to a petition filed under this section.

322 Md. 606, 611, 589 A.2d 53, 56 (1991); *Attorney Griev.
Comm'n v. Babbitt,* 300 Md. 637, 642, 479 A.2d 1372, 1375
(1984).

There is value in having an attorney who has been sanc-
tioned [15] reflect on the conduct that prompted the sanction
and, in that way, gain, or at least be enabled to gain, an
appreciation for its seriousness and resolve to prevent or avoid
its repetition. This is especially the case where, as here, it is
not very clear that the sanctioned attorney has the requisite
appreciation or resolve. Rule 16–781(g),[16] with its prescription
of detailed requirements for a petition for reinstatement, when

---

15. This is the respondent's first sanction, for disposition purposes.
Contrary to his admission, in response to a question from the Bench, to
having been reprimanded, prior proceedings against the respondent
were dismissed with a warning by Bar Counsel. The conduct involved
in those proceedings was, however, similar to that in this case.

16. Rule 16–781(g) provides:
  "(g) Criteria For Reinstatement. The Court of Appeals shall consider
  the nature and circumstances of the petitioner's original conduct, the
  petitioner's subsequent conduct and reformation, the petitioner's
  current character, and the petitioner's current qualifications and
  competence to practice law. The Court may order reinstatement if
  the petitioner meets each of the following criteria or presents suffi-
  cient reasons why the petitioner should nonetheless be reinstated:
  "(1) The petitioner has complied in all respects with the provisions of
  Rule 16–760 and with the terms and conditions of prior disciplinary
  or remedial orders;
  "(2) The petitioner has not engaged or attempted or offered to
  engage in the unauthorized practice of law and has not engaged in
  any other professional misconduct during the period of suspension,
  disbarment, or inactive status;
  "(3) If the petitioner was placed on inactive status, the incapacity or
  infirmity (including alcohol or drug abuse) does not now exist and is
  not reasonably likely to recur in the future;
  "(4) If the petitioner was disbarred or suspended, the petitioner
  recognizes the wrongfulness and seriousness of the professional mis-
  conduct for which discipline was imposed;
  "(5) The petitioner has not engaged in any other professional miscon-
  duct since the imposition of discipline;
  "(6) The petitioner currently has the requisite honesty and integrity
  to practice law;
  "(7) The petitioner has kept informed about recent developments in
  the law and is competent to practice law; and
  "(8) The petitioner has paid all sums previously assessed by the order
  of the Court of Appeals."

considered in conjunction with Rule 16–781(d), which lists some fourteen items that an applicant must supply to Bar Counsel, is an appropriate vehicle to ensure that the requisite attention and introspection occur. The focus of the requirements is on the conduct and the steps that have been, or must be, taken to avoid a repetition of the offending conduct.

Accordingly, we agree with the petitioner: the appropriate sanction is an indefinite suspension, with the right to apply for reinstatement after 60 days.

IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING COSTS OF ALL TRANSCRIPTS, PURSU-ANT TO MARYLAND RULE 16–761, FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTOR-NEY GRIEVANCE COMMISSION AGAINST FRANCIS MACDOUGALL.